[Civ. No. 14619.   First Dist., Div. One.   June 18, 1951.]

CHRISTOPHER G. COUNTER, Individually and as Administrator, etc., Respondent, v. RICHARD P. COUNTER, Appellant.

Hoge, Pelton & Gunther, Reginald M. Watt and Leo V. Killion for Appellant.

Frank J. Perry and John F. O'Sullivan for Respondent.

BRAY, J.—Defendant appeals from a judgment entered against him in an action brought against him by his father

individually and as administrator of the estate of his deceased wife, the son's mother, to cancel a deed to real property.

### QUESTION PRESENTED

Does physical delivery of a deed control over circumstances showing that the delivery was intended only as a testamentary disposition and was without intent to pass title?

### FACTS

Plaintiff and his wife Katherine owned certain real property in San Francisco, consisting of three flats, one of which was occupied by them as their home. The property was given originally to plaintiff by his mother. How an interest in it got into the wife does not appear. They had two children, defendant and a daughter, Bernice. Defendant lived there with his parents until after the death of the mother. He evidently was her favorite, but did not get along too well with his father. On one occasion Mrs. Counter stated to plaintiff that she would like to have their affairs arranged so that in case anything happened to them defendant would get three-quarters and Bernice one-quarter of the property. This was the only discussion of the matter prior to the making of the deed. Mrs. Counter had been confined to her bed for a considerable period. Defendant testified that his mother told him she wanted his attorney to draw some papers for her. Defendant called his attorney and then the mother took the phone, saying that she wanted a gift deed prepared deeding the property to her son and daughter. No further discussion was had. The attorney assumed that Mrs. Counter meant that the property was to go in equal shares to the children, and so prepared the deed conveying an undivided one-half interest to each. He then phoned defendant, stating that he would be out on December 31, 1937. On that day the attorney brought with him a Mrs. Townsend, a notary public. When they arrived Mrs. Counter was in bed. Another woman, Mrs. Raggio, now deceased, who was Mrs. Counter's nurse, and plaintiff and defendant were present. Just prior to the attorney's arrival, defendant had gone around the corner to the place where plaintiff was working and had him come home. In the presence of the group, the attorney showed the deed to both plaintiff and Mrs. Counter. Both read it. The attorney asked "if that was the way they wanted it." Plaintiff stated that he wanted his half to go to the son and daughter. Mrs. Counter said she wanted her half to go to the son. The attorney then wrote in ink on the deed, changing the disposition

from one-half to each, to two-thirds to defendant and one-third to Bernice. As the attorney stated on cross-examination, his arithmetic was poor. To meet the wishes of the grantors, the disposition should have been three-quarters and one-quarter. The attorney then asked if the deed was the way plaintiff and Mrs. Counter wanted it and they said it was. It was then signed by both. The notary acknowledged it. The attorney then told plaintiff and Mrs. Counter "that to make the deed effective they would have to give it to Richard [defendant] at that time." Plaintiff gave it to Mrs. Counter, and she gave it to defendant. The attorney and the notary then left. At no time was anything else said about the deed. The attorney did not advise either plaintiff or Mrs. Counter as to whether or not the deed would convey present title, nor the effect of a delivery of the deed. Plaintiff testified that on this day prior to the arrival of the attorney there was a conversation between himself and Mrs. Counter in the presence of the boy in which Mrs. Counter said she wanted to give defendant three-quarters and the daughter one-quarter after plaintiff's death. Plaintiff suggested they be treated equally. The attorney said nothing after his arrival except to tell plaintiff and Mrs. Counter to sign the deed. The first plaintiff knew about the deed was when the attorney arrived with it. Plaintiff also testified that after the attorney and notary left he took the deed back from defendant, stating, "Listen, I don't want this recorded until something happens to me. . . . I still own it." Plaintiff then placed the deed in a tin box in the bureau drawer. The next morning he went to get the deed and it was gone. Plaintiff testified that it was his intention that the deed not become effective until after he died. "When I signed that deed of gift, that was signed in love and affection, not to be executed until my death, only." Defendant testified that in the presence of the attorney his mother and father told the attorney how they wanted the property divided after their death. Defendant denied the statement plaintiff claimed to have made to him after the deed was signed. He also claimed that he, and not his father, placed the deed in the bureau drawer. The next day defendant took the deed from the drawer and gave it to the attorney for safekeeping. Defendant contradicted himself by first saying that after the deed was handed him he "figured" the deed was his and then stating that he knew that both his mother and father intended to keep the property until they died and had no intention of parting with it until they died. Mrs. Counter died March

29, 1947, about nine years after the deed episode. Plaintiff at all times considered the property his, managed it, collected the rents, paid income tax on the amount collected, paid the cost of upkeep, insurance, taxes, of all of which defendant was aware. Plaintiff remarried May 4, 1948. Two days thereafter defendant obtained the deed from the attorney and recorded it. At no time prior thereto did defendant assert any claim to the property, attempt to collect any rents, offer to pay any expenses. The daughter never made any claim to the property and deeded back to plaintiff the one-third interest mentioned in the deed.

### 1. *Physical Delivery.*

Defendant's main contention is that the physical delivery of the deed to defendant vested title in the grantee subject only to a life estate in the grantors, regardless of the circumstances of the delivery. He contends that such delivery bars any claim that the intention of the grantors was otherwise. This contention disregards one of the most important matters in connection with the delivery of a deed, which is, what was the intention of the grantors? ▮ "The delivery of a deed is not effected by a mere manual tradition of the instrument, unless the act 'be accompanied with the intent that the deed shall become operative as such' [citation] i. e., that it shall presently pass title, without the reservation of any right of revocation or recall. [Citation.] Whether or not the requisite intent existed is a question of fact for the trial court or jury." (*Hefner* v. *Sealey,* 175 Cal. 18, 19 [164 P. 898].) ▮ Physical delivery raises an inference that the grantors are immediately parting with the title. But that inference may be overcome by evidence showing that such was not the intention of the grantors. Here, while the circumstances were such as to support a conclusion, had the trial court made it, that the grantors intended to vest title reserving to themselves only a life estate, such a conclusion is not compelled. ▮ A very reasonable conclusion is the one drawn by the court, namely, that the grantors did not intend to part with the title but merely intended the deed as a testamentary disposition to take effect upon their death. The fact that the father and the son did not get along too well, that the only discussion of a disposition of the property was a disposition after their deaths,* that the attorney at no time inquired as to when

---

*Mrs. Counter had been ill for 10 years. She had had a stroke and had been bedridden for a considerable time. Hence plaintiff, when stating that the deed was only to be effective after *his* death, obviously felt that he would be the last to die.

they intended the deed to take effect nor explained to them the legal effect of their action, that immediately plaintiff took the deed from defendant and placed it in plaintiff's own tin box, the complete control of the property by plaintiff and the absence of any indication by defendant that he considered that title had passed (of course, if plaintiff and his wife had merely reserved a life estate they would have been entitled to the rents, so the failure of defendant to be concerned with the rents is not necessarily significant; however, the fact that all expenses including those of maintenance were paid by plaintiff and no offer of help by the alleged remainderman is an item to be considered), the admission of defendant that he knew that the grantors had no intention of parting with the property until they died (even though he contradicted this admission), are all circumstances supporting the court's finding that the grantors, by the physical delivery of the deed, did not intend to part with title but intended only that the deed was to be testamentary in character and not to take effect until after the death of both.

The attorney testified that he told the grantors that the deed would not be effective for any purpose unless it was delivered that day. Such a statement to a layman gives no hint of the legal effect of a physical delivery. To a layman it is completely consistent with a conclusion that to be good as a testamentary disposition it must be handed over. The fact that when plaintiff discovered the next day the deed had been taken from the tin box he did nothing about it, while a circumstance which the court might have felt supported defendant's contention, is not compelling or conclusive. Such circumstance is not completely inconsistent with plaintiff's belief that the deed was testamentary in character.

### DEFENDANT'S AUTHORITIES

Defendant has cited a number of authorities on the subject of delivery of deeds. They are all cases in which the court found that the intention of the grantor was to effect an immediate parting with title. None of them supports defendant's contention that the fact of physical delivery bars an inquiry into the intention with which such delivery is made. *Bury v. Young*, 98 Cal. 446 [33 P. 338, 35 Am.St.Rep. 186], a leading case in California, upon which defendant mainly relies, does not so hold. The full facts in that case are not set forth. However, it appears that the grantor called an attorney to his bedside for legal advice as to the disposition of his prop-

erty and then still acting on his advice the grantor signed and acknowledged the deed, and gave it to the attorney with instructions not to record it but to deliver it to the grantees on his death. Thereafter he endeavored to get the deed back and the attorney refused to give it to him. In an action after his death, the court held that by the delivery of the deed title passed to the grantees subject to a life estate in the grantor. On appeal the question was whether the findings supported the judgment. The findings after reciting that the grantor had delivered the deed to the attorney, *for the grantees,* stated that the grantor had then and there parted with all dominion over the deed and reserved no right to have or enjoy any other or further interest in the premises than to hold the use thereof until his death. It was held that such findings did not support the judgment. It must be noted that the trial court found from the evidence, probably based upon the fact that the grantor was advised by the lawyer and was following his advice, that the grantor reserved no rights. Actually the Bury case supports our conclusion, for the court said (p. 451) : ''The essential requisite to the validity of a deed transferred under circumstances as indicated in this case, is that when it is placed in the hands of the third party, it has passed beyond the control of the grantor for all time. That question is determined by the grantor's intention in the matter, and his intention in making the delivery is a question of fact, to be solved by the light of all the circumstances surrounding the transaction.'' (See, also, *Hotaling* v. *Hotaling,* 193 Cal. 368, 382 [224 P. 455, 56 A.L.R. 734].)

In *Merritt* v. *Rey,* 104 Cal.App. 700 [286 P. 510], where the court found that the grantor intended to pass immediate title, the facts are so dissimilar to ours as not to require further comment. However, the court there laid down the rule which binds us here (p. 705) : ''The question regarding the intent of the grantor in executing and leaving the deed with the conveyancer and as to whether she thereby parted with all control over the instrument and then actually transferred title to the grantee are problems of fact to be determined by the court and its solution will not be disturbed on appeal where there is substantial evidence to support the conclusions.''

In *Herman* v. *Mortensen,* 72 Cal.App.2d 413 [164 P.2d 551], the attorney explained at length to the grantor the effect of delivery before she parted with the deed, thus providing substantial support for the jury's implied finding that the grantor

contended that title should vest immediately in the grantee. *Des Granges* v. *Des Granges,* 175 Cal. 67 [165 P. 13], and *Knudson* v. *Adams,* 137 Cal.App. 261 [30 P.2d 608], were factually different from our case.

The evidence in this case brings it under the rule set forth in *Williams* v. *Kidd,* 170 Cal. 631, 637 [151 P. 1, Ann.Cas. 1916E 703] : "If the deed is handed to the depositary without any intention of presently transferring title, but, on the contrary, the grantor intended to reserve the right of dominion over the deed and revoke or recall it, there is no effective delivery of the deed as a transfer of title. So, too, if it be the intention of the grantor when he deposits a deed that it shall only be delivered to the grantee by the depositary after the death of the grantor, and that the title is to vest only upon such delivery after his death, then the deed is entirely inoperative as constituting an attempt by the grantor to make a testamentary disposition of his property. This may only be done by will executed as required by the law of wills of this state, and a deed, the purpose of which is intended to be testamentary, cannot be given effect."

In *Azevedo* v. *Azevedo,* 1 Cal.App.2d 504 [36 P.2d 1078], the main contention of defendant here is answered (p. 506) : "However, manual tradition alone is not enough; the transfer of possession must be with the intent of presently passing title and must not be hampered by any reservation of right of revocation or recall . . ."

The judgment is affirmed.

Peters, P. J., and Agee, J. pro tem., concurred.