[Civ. No. 4367.   Fourth Dist.   July 23, 1952.]

EVERETT O. KELLY, Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, as Executor, etc., Respondent.

McFadzean, Crowe & Mitchell for Appellant.

Maddox & Abercrombie and Erling H. Kloster for Respondent.

MUSSELL, J.—This is an appeal by plaintiff from a judgment and order denying a new trial in an action to quiet title against the executor of the estate of Arthur H. Kelly, the appellant's deceased father. The order is not appealable. (*Estate of Dopkins,* 34 Cal.2d 568, 569 [212 P.2d 886] ; *Fay* v. *Norquist,* 60 Cal.App.2d 218, 219 [140 P.2d 141].)

Plaintiff's claim to title is based upon a gift deed to him from his father, Arthur H. Kelly. The deed is dated July 9, 1943, signed and acknowledged by the grantor and was manually delivered to and accepted by plaintiff on said date. The principal defense pleaded by defendant was that the said gift deed was invalid for want of a delivery with the required intent of the grantor to presently part with title. The trial court found for defendant on this issue and entered judgment in favor of the defendant, declaring that the plaintiff has no right, title or interest in said real property adverse to the estate. The principal question for our determination is whether there is any substantial evidence to support the findings and judgment.

## Facts

A few days prior to July 9, 1943, Arthur H. Kelly called at the offices of an attorney for the purpose of having a gift deed to the property involved herein prepared in favor of his son, Everett O. Kelly. The attorney advised Kelly that ''He needed to deliver the deed to his son with the intent then and there to pass all his title to the property and that no conditions or secret understandings could be had by him or by his son with respect to the property; that after he had so delivered the deed, his son would be the owner of the property; that he could, if he cared to do so, request his son not to record the deed until after his death without vitiating the effect of the deed, but that his son would not necessarily have to abide by that request.'' The attorney stated that he did not believe in the execution of such a deed and advised Kelly ''not to do it.'' Having been so advised, Mr. Kelly stated that he wanted to give the property to his son and instructed the attorney to prepare the deed. Thereafter, on July 9, 1943, Mr. Kelly returned to the offices of the attorney with his son. Mr. Kelly was then instructed,

for the second time, that it would be necessary for him to deliver the deed after he had executed the same, with the intent then and there to pass title to the property in question to his son; and that when he had so delivered the same, his son would be the owner of the property and that he would have no further interest therein; and that he could not thereafter recall said deed and côuld have no conditions or secret intentions with respect to the same. The attorney called in his secretary and asked her to witness the remainder of the transaction. He then handed the deed to Arthur H. Kelly and stated ''Here is the deed. You may now do as you wish with it.'' Arthur Kelly thereupon, holding the deed in his hand, stated to his son ''Here is the deed to the home property which I am giving to you without any strings attached. The only request I want to make is that you do not record the deed until after my death.'' He then handed the deed to his son, who accepted it, put it in his pocket and after having been advised that gift tax returns would have to be made and that probably a gift tax would have to be paid, Mr. Kelly and his son left the attorney's office.

Everett O. Kelly testified that ''On July 9, 1943, Mr. Mitchell and Miss Francis and my Dad and myself were present. And Mr. Mitchell handed Dad the deed after he signed and notarized it and told him he could do as he wished with it. Thereupon Dad handed me the deed and said, 'I want you to have this ranch, Everett. I am giving it to you with no strings attached whatsoever. The only thing that I ask is that you don't record it for a couple of days after my death;' '' that he accepted the deed and placed it in .his filing cabinet where it remained until December of 1947, when it was delivered to Arthur Kelly, at his request, and by him delivered to the attorney who prepared his will.

In December of 1947, during his last illness, Arthur Kelly requested an attorney to prepare his will and, after several conversations with a trust officer of defendant bank and the attorney, Arthur Kelly, on December 15, 1947, executed a will, under the terms of which plaintiff and decedent's wife, Winnie Kelly, were given certain personal property and all remaining property, including the 14-acre ranch now in dispute, was placed in trust with defendant bank as trustee and executor.

During the conversations had with Arthur Kelly prior to the execution of his will he was questioned as to the title

of the ranch property. He mentioned the 1943 gift deed and stated it had no value; that it was in his possession, and there would never be any trouble over it; that "He anticipated a rather severe operation and that he made the deed with the understanding that if he did not survive, it was to be used; if not, why it wasn't to be used." Arthur Kelly, being unable to find the deed among his papers, stated that he knew who had it and that he would get it back. Upon ascertaining that it was in plaintiff's possession, he asked plaintiff to "bring it down" so that he could check it over. Upon receiving the deed, Arthur Kelly handed it to his attorney saying "Here it is. You can destroy it."

At the time the deed was executed Arthur Kelly was in poor health. He expected to have a severe operation and did not think that he would survive. A few months later the operation was performed, after which his health improved for a time and he was able to do some work on his ranch. In 1947 he was again very ill and died from cancer within a month or two after executing his will.

Arthur Kelly and his wife were living on the ranch property involved at the time of the execution of the deed and continued to live there until the time of his death, during which time he exercised all of the usual rights and duties of ownership in connection with his property. Insurance on the buildings was carried only in decedent's name, the premiums were paid by him and the plaintiff was not named as insured or beneficiary in the policy. Decedent borrowed money from a local bank on three occasions to finance the operation of the property and gave written financial statements to the bank showing that he claimed to be the sole owner thereof. He paid all expenses of operating the property, kept all income from it, and in his income tax return reported all the income, claimed all deductible expenses of ranch operation and took credit for all allowable depreciation on the property. Plaintiff did not occupy the ranch property after the execution of the gift deed other than to assist his father with the crops on a few occasions, for which he received $50 expense money in 1947. He took no income from the property, paid no gift or other taxes on it, and did not otherwise exercise rights of ownership over it. He did not record the gift deed and in obtaining bank loans, did not claim ownership of the property in financial statements which he furnished to the bank. Other financial statements were introduced in evidence showing that in 1945 plaintiff stated

that he owned no real property and that in 1947 his only real property was at Badger, California.

Mrs. Arthur Kelly, who had married the decedent in 1937, worked on the ranch and also took employment in local stores during her husband's ill health. A joint bank account was established, and a bank loan on the property was paid from it in 1947. The property was improved through the efforts of Mrs. Kelly and the decedent. During his last illness, at decedent's request, his wife transferred $4,000 from their joint account into an account in decedent's name alone so that ranch expenses could be paid and the executor would have funds to operate it after decedent's expected death.

Decedent did not inform his wife that he had made any transfer of the property in 1943 and the plaintiff at no time told her that he had any claim to the property until after decedent's death.

It was shown that the decedent had been in the lumber business for several years and was an experienced, capable and intelligent businessman.

The trial court found, among other things, that Arthur H. Kelly, on July 9, 1943, signed, acknowledged and manually handed the gift deed to plaintiff but that he did not deliver it for the purpose of conveying the property to plaintiff or with the intent of then passing any title or interest therein to him; that plaintiff did not accept conveyance of the property, as alleged in plaintiff's complaint, except that he did accept the manual tradition of said deed; that plaintiff returned the deed to Arthur Kelly without restriction or qualification; that plaintiff has never owned or been in possession or seized of all or any part of said real property or any interest therein under or by reason of said purported gift deed; that the said deed was and is invalid and of no force or effect; that plaintiff never asserted any right, title, claim or interest in or to said property under said purported gift deed until more than four months after the death of Arthur H. Kelly; that at the time of the purported delivery of the deed it was the mutual intent, understanding and agreement of said Arthur H. Kelly and plaintiff that said deed did not pass title to the property therein described to the grantee therein at the time or by reason of the purported delivery thereof; that plaintiff surrendered said deed to Arthur H. Kelly prior to his death and that said property was thereafter disposed of by the last will and testament of the decedent.

■ The evidence of acts and declarations of Arthur Kelly and his son, subsequent to the execution of the gift deed, was admitted over strenuous objection of counsel for plaintiff and it is contended that such evidence was inadmissible since there was a plain and unequivocal delivery of the deed accompanied by a clear and unmistakable expression on the part of the grantor to presently pass title to the property to plaintiff. However, where, as here, the issue is whether the grantor intended that the deed should be presently operative, such testimony is admissible. (*Huth* v. *Katz,* 30 Cal. 2d 605, 608 [184 P.2d 521].) ■ As was said in *Whitlow* v. *Durst,* 20 Cal.2d 523 [127 P.2d 530] :

"When intent is a material element of a disputed fact, declarations of a decedent made after as well as before an alleged act that indicate the intent with which he performed the act are admissible in evidence as an exception to the hearsay rule, and it is immaterial that such declarations are self-serving. Thus, in cases involving the delivery of deeds, declarations of the alleged grantor made before and after the making of the deed are admissible upon the issue of delivery, and it is immaterial that such declarations are in the interest of the party producing them. (*Williams* v. *Kidd,* 170 Cal. 631 [151 P. 1, Ann.Cas. 1916E 703] ; *Donohue* v. *Sweeney,* 171 Cal. 388 [153 P. 708] ; *De Cou* v. *Howell,* 190 Cal. 741 [214 P. 444] ; see McBaine, Admissibility. in California of Declarations of Physical or Mental Condition. 19 Cal.L.Rev. 231, 251)." The quoted language was stated to be a succinct statement of the rule in *Hansen* v. *Bear Film Co.,* 28 Cal.2d 154, 174 [168 P.2d 946].

In *Huth* v. *Katz, supra,* the plaintiff sought to establish a delivery of an unrecorded gift deed and an assignment of a promissory note secured by a deed of trust. The plaintiff had for several years gone to decedent's home twice a week to clean his house and to do his washing and ironing. About a year before his death decedent told her that he intended to transfer his property to her and that Mr. Webb (a real estate broker) would "draw up the papers for it." On or about June 29, 1943, plaintiff went with decedent to Webb's office, where Webb handed the deed and assignment to decedent, who in turn handed them to plaintiff, saying "They are all yours, kid, they belong to you now." Webb testified that the decedent had called at his office and requested him to prepare the necessary papers to transfer the property to plaintiff. Webb prepared the deed and assign-

ment and a few days later the papers were signed and acknowledged by decedent in the presence of a notary public. When decedent informed Webb that he desired to make the transfer, Webb told him that "There must be a delivery" and after the papers were signed, decedent said to Webb "I want delivery." The papers were left with Webb at his office and a few days later decedent returned with plaintiff. The decedent then gave the deed and assignment to plaintiff and said "Now it is all yours." Plaintiff took the deed and assignment home but later decided that it was unsafe to keep the documents there and put them in decedent's safety deposit box, where they were found after his death. The decedent continued to live on the property after the execution of these documents until his death and collected the rentals therefrom and had the principal and interest of the promissory note credited to his account. The court affirmed a judgment for the defendant and held that a valid delivery of a deed depends upon whether the grantor intended that it should be presently operative; that a manual transfer is not conclusive evidence of such intention; that when the question at issue is whether or not there has been a valid delivery, the possession of the deed by the grantor and his exercise of dominion and control of the property after manual transfer of the deed are facts which may be considered in determining whether he intended presently to pass title; that the fact that the deed and assignment were found in decedent's safety deposit box to which he alone had access, and the further facts that decedent continued to live on the property, collect the rentals and have the principal and interest of the note credited to his account were matters which the trial court could consider in determining whether decedent intended the deed and assignment to operate as a present transfer of the property described therein.

The question of delivery or nondelivery of a deed is a question of fact to be determined from the surrounding circumstances of the transaction and to constitute a valid, effective delivery, it must be shown that the grantor intended to divest himself of title. (*Miller* v. *Jansen*, 21 Cal.2d 473, 477 [132 P.2d 801]; *Williams* v. *Kidd*, 170 Cal. 631, 638, 639 [151 P. 1, Ann.Cas. 1916E 703].) The act of the delivery of the deed must be accompanied with the intent that it shall become presently operative as such and presently pass title. (*Fay* v. *Norquist, supra*, p. 223; *Williams* v. *Kidd, supra*, pp. 638, 639.) Whether or not the

requisite intent exists is a question of fact for the trial court or jury. (*Counter* v. *Counter*, 104 Cal.App.2d 786, 789 [232 P.2d 551].)

The evidence shows that the decedent was advised by his attorney that to make a gift deed effective it was necessary that there be no conditional delivery. When the deed had been signed and acknowledged, Arthur H. Kelly handed it to his son, saying "Here is the deed to the home property which I am giving to you without any strings attached. The only request I want to make is that you do not record the deed until after my death." ■ While the fact that such a request was made would not necessarily affect the validity of the deed (*Stewart* v. *Silva*, 192 Cal. 405, 410 [221 P. 191]), it is a strong circumstance indicating the intent of the grantor at the time, when considered with the decedent's later statement that he anticipated a rather severe operation and that he made the deed with the understanding that it was to be used only if he did not survive such operation. ■ These statements, with the evidence showing that the decedent was then in poor health and did have such an operation, together with the evidence of his subsequent acts and declarations, support a reasonable inference that he did not intend to presently pass title to the property at the time the deed was handed to his son. In this connection it may be observed that the record does not show that the question of possession of the property after the execution of the deed was discussed at this time. ■ If it were the intention of Arthur H. Kelly that the title to the property would pass to his son only in the event that the grantor did not survive his operation, then the deed is entirely inoperative as constituting an attempt to make a testamentary disposition of the property. This may only be done by a will executed as required by law. A deed, the purpose of which is intended to be testamentary, cannot be given effect. (*Williams* v. *Kidd, supra*, pp. 637, 638; *Cox* v. *Schnerr*, 172 Cal. 371, 381 [156 P. 509].)

Plaintiff argues that when, as here, an unequivocal delivery of a gift deed has been established by unquestioned and unquestionable proof of a manual tradition of said deed to the grantee therein named, accompanied by words of the grantor which clearly and unmistakably indicate his intention to vest title in said grantee, evidence of subsequent acts and declarations of the grantor is never admissible for the purpose of proving the intention of the grantor at the time of the de-

livery of the deed. This argument is based upon the assumption that there was an unequivocal delivery of the deed in question. The trial court found against plaintiff on this issue and we cannot say, as a matter of law, that its finding in this respect is unsupported by the evidence. When delivering the deed to his son, Arthur Kelly's last request was that it remain unrecorded until after his death. A condition was thereby attached to the delivery, which opened the door to a determination of the significance of that request. No explanation was sought or given as to the intent of the grantor when such request was made. The subsequent acts and declarations of the grantor and the grantee furnished ample evidence to support the trial court's finding that there was a delivery of the deed without intent to immediately pass title to the property.

Plaintiff relies principally upon the decision in *Shaver* v. *Canfield,* 21 Cal.App.2d 734 [70 P.2d 507], to support his position in the instant case. In that case the trial court found that the deeds involved were delivered with the intention to pass title and the contention of appellant is that the evidence was insufficient to support that finding. The court stated, at page 736:

"In considering the facts in this case we must keep in mind, as said in *Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140 [134 P. 1157], that '. . . in examining the sufficiency of the evidence to support a questioned finding, an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion.' "

An examination of the facts stated therein showed that the deeds involved were deeds delivered without equivocation and nothing was said by the grantor from which the court could conclude that the grantor did not then intend to pass title. Under such circumstances the court properly excluded offered testimony of declarations of the grantor prior to the delivery of the deeds where the language of the grantor at the time of the manual tradition and his actions were plain and unambiguous. The court, in commenting upon the situation presented in *Stone* v. *Daily,* 181 Cal. 571 [185 P. 665], stated, at page 740:

" (D)eeds were signed by husband and wife and placed in escrow with the bank, to be delivered to the survivor; the court considered the previous agreement of the parties and

found that the delivery was not absolute and was conditional upon the grantee surviving the grantor. There is no doubt that the law will examine the surrounding circumstances, that is the *res gestae*, and if two conflicting inferences arise, one as to the delivery and the others as to non-delivery, declarations by a decedent both before and after delivery are admissible for the purpose of throwing light upon these conflicting inferences.''

In determining the validity of the deed involved we must consider not only the intent of the grantor but also whether the deed was delivered to and accepted by the grantee as an unequivocal transfer of title to him. As was said by this court in *Reina* v. *Erassarret,* 90 Cal.App.2d 418, 426 [203 P.2d 72, 7 A.L.R.2d 1309]:

'' 'Delivery' is a word of well-defined meaning in law. The elements are that the writing must be meant by the maker to take immediate effect and be presumably or in fact, *accepted* by the other party. The delivery and acceptance are of necessity simultaneous and correlative acts. The law does not force a man to take title to real property against his will. (*Hibberd* v. *Smith,* 67 Cal. 547 [4 P.473, 8 P.46, 56 Am.St.Rep. 726].) Hence, the assent of the grantee is necessary in order to make a delivery effective and the deed operative as such.''

The evidence shows beyond question that there was a manual delivery of the deed. However, it also shows that the grantee did not assume possession of the property, pay taxes thereon, report the gift taxes, and did not seek a return of the deed after its delivery to his father. Proof of these circumstances was admissible to show lack of delivery and acceptance by the grantee. The determination of whether there was a delivery and acceptance were questions of fact for the trial court.

Considering the entire record before us under the familiar rule stated in *Berniker* v. *Berniker,* 30 Cal.2d 439, 444 [182 P.2d 557], we cannot here set aside the findings of the trial court.

The judgment is affirmed and the attempted appeal from the order denying a motion for a new trial is dismissed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 18, 1952.