[Civ. No. 4469.   Fourth Dist.   Jan. 14, 1953.]

JOHN W. STONE, Respondent, v. LILLIE K. WALSWORTH, Appellant.

David A. Fall for Appellant.

McCabe & Schumacher for Respondent.

MUSSELL, J.— In this action to cancel a deed and to quiet title to real property in Brea, Orange County, it is alleged that the property was purchased and paid for by the joint efforts of plaintiff and his wife, Lillie Stone; that the title to said property was taken in the name of Lillie Stone for the purpose of convenience only but with no intention of making a gift to her or releasing any right, title or interest of plaintiff therein; that on or about July 2, 1947, the said Lillie Stone importuned the plaintiff to sign a deed to said property naming Lillie Walsworth (a daughter of Lillie Stone), as grantee, upon the representation that the deed would not be delivered but would be held jointly and the survivor could "do what he pleased with it"; that the plaintiff executed the deed, relying upon said representation; that there was no consideration for said deed; and that de-

fendant claims an interest in the property adverse to plaintiff.

The trial court found that the property was community property of plaintiff and his deceased wife, Lillie Stone; that the deed to Lillie Walsworth was null and void; and that plaintiff did not intend that it should be delivered to defendant Lillie Walsworth. Judgment was rendered quieting plaintiff's title in fee simple absolute. Defendant appeals on the grounds that the evidence is insufficient as a matter of law to support the findings and judgment; that the court erred in finding that the real estate was community property; and that the attempt to reserve a life estate in a party foreign to the title was void.

Plaintiff and Lillie Stone were married on July 15, 1939, at the ages of 66 and 62, respectively. Plaintiff was then a recipient of an old age pension in the sum of $40 per month, which was increased periodically thereafter to $75 per month. Lillie Stone was operating a small restaurant which she sold in December, 1939, for the sum of $250. Plaintiff had no other funds aside from his pension. On April 26, 1940, plaintiff and his wife purchased real property in Long Beach, California, the title to which was taken in the name of Lillie C. Stone, a married woman. Plaintiff testified that the reason for taking the title in this manner was because he had been told he could have not any title to any real property while drawing a pension. On November 6, 1940, Lillie C. Stone received a pension of $65 per month and the monthly payments on the Long Beach property were made out of the proceeds of the pension checks, which were cashed by plaintiff and commingled. In 1946 the Long Beach property was sold and the proceeds therefrom were used to make the down payment on a parcel of real property in Brea, the subject of this litigation. The balance of $1,500 owing on the Brea property after the down payment was being paid off out of the proceeds of the pension checks of the parties. The title to the Brea property was also taken in the name of Lillie C. Stone, a married woman.

On July 2, 1947, the Stones went to the office of Mr. Highley, a notary public, and there, at Mrs. Stone's request, both parties signed a deed to the Brea property naming the appellant Lillie K. Walsworth as grantee, the deed "reserving unto said grantors a life estate in and to the property herein described for and during the life of said grantors."

Plaintiff testified in this connection that when they went to the notary's office Lillie Stone said "I want a deed for our

daughter on our place''; that ''Mr. Highley looked at me and said, 'Will you sign the deed?' and I said, 'No.' That is the first I knew about it, looking for a deed. I said 'No.' . . . Well then I said, 'No, I won't sign that deed,' then he said 'See here,' he says, 'That deed ain't to go to your daughter; that deed is to be kept for the last survivor and the last survivor can do as they like about it, sell it or do anything they wanted to do with it,' and I said 'On them grounds I will sign the deed. That deed is to be kept.' So he made the deed and we both signed it on that agreement.''

The notary testified as follows:

''Both of these people were on the old age assistance and at the time of the property settlement, discussion of real property, the question was brought up, and I am an authority on social welfare—it was brought up as to what could be done with their property. I stated that under the Welfare and Institutions Code, that a person recipient of old age assistance could deed their property to anyone as long as they retained life estate and the income and pleasure thereof. After that she said, 'That is what I want to do.' She said, 'I want to take this property so that we will have a life estate in it,' and this is being done many times by recipients of old age assistance, and at the time I said, 'Well, I will be glad to help you,' as being both of them was members of my Cooperative Club, and I told them that I would be glad to assist them as I was a Notary Public; I would fix it up, and I made the deed, and when I got through I handed it to her, and she said that she wanted to take the deed home and in case of her death, it would then be up to Mr. Stone, and that was done.''

Appellant testified that on July 2, 1947, plaintiff and his wife came to her house and stated that they had been to Mr. Highley's office in Los Angeles and had made out a deed to the property in Brea; that her mother stated that she wanted to be sure that ''John had a home for life''; that the deed had been made out to her and that she turned to ''John'' and asked him if that was his wish too and he said ''Yes''; that at that time the deed was given to appellant; that she put it in her desk and it remained in her possession until her mother's death on March 22, 1949, on which date it was recorded.

There is evidence in the record that the plaintiff and his wife made statements to the welfare department to the effect that they were buying the Brea property and evidence that they were trying to sell it in June of 1948.

Appellant argues that the evidence was insufficient to overcome the presumption set forth in section 164 of the Civil Code, which provides as follows:

". . . whenever any real or personal property, or any interest therein or encumbrance thereon is acquired by a married woman by an instrument in writing, the presumption is that the same is her separate property, . . ."

In *Bales* v. *Farley*, 107 Cal.App.2d 642, 646, 647 [237 P.2d 686], this court held that:

"The true situation in rebuttal of the presumption created by section 164 of the Civil Code can be shown by circumstantial as well as by direct evidence, and the inferences to be drawn from the evidence are for the trier of facts to determine so long as those inferences find reasonable support in the evidence given. (*Nichols* v. *Mitchell,* 32 Cal.2d 598, 609 [197 P.2d 550].)"

In *Estate of Piatt,* 81 Cal.App.2d 348, 352 [183 P.2d 919], where property was purchased entirely on credit with joint notes of husband and wife, where no portion of the purchase price was paid at the time of transfer and where the parties kept their earnings in separate bank accounts but otherwise used them for their common needs, the evidence was held sufficient to support an implied finding that the presumption mentioned in Civil Code, section 164, that the property conveyed in the name of a married woman is her separate property was rebutted and that the question relating to the character of the property was one of fact only.

In *Attebury* v. *Wayland,* 73 Cal.App.2d 1, 5 [165 P.2d 524], it is held that it is for the trier of facts to determine whether the evidence is sufficient to overcome the presumption.

Viewing the evidence in the light of these rules, we are unable to say as a matter of law that there was no evidence to support the trial court's finding as to the community character of the property involved.

As was said in *Estate of Baer,* 81 Cal.App.2d 830, 833 [185 P.2d 412]:

"A determination by a trial court that the presumption raised by section 164 of the Civil Code (that property conveyed to the wife is her separate property) has been rebutted is conclusive upon an appellate court unless it is manifestly without sufficient support in the evidence. (*Williamson* v. *Kinney,* 52 Cal.App.2d 98, 102 [125 P.2d 920], and cases therein cited.)."

374

██ ██ The question of delivery or nondelivery of the deed to appellant is a question of fact to be determined from the surrounding circumstances of the transaction, and to constitute a valid, effective delivery, it must be shown that the grantor intended to divest himself of title. ██ The act of the delivery of the deed must be accompanied with the intent that it shall become presently operative as such and presently pass title. ██ Whether or not the requisite intent exists is a question of fact for the trial court or jury. (*Kelly* v. *Bank of America*, 112 Cal.App.2d 388, 395 [246 P.2d 92].)

██ In the instant case the testimony of the plaintiff indicates a lack of intent to pass title to the property by the deed in question and this testimony is corroborated to some extent by that of the notary who acknowledged the deed and by other evidence. Under these circumstances, we cannot say that there is no substantial evidence to support the trial court's finding that the deed was null and void.

In view of what we have here said, it is unnecessary to pass upon the question of whether the attempt to reserve a life estate in the property was void.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 12, 1953.