[Civ. No. 17843. First Dist., Div. One. Oct. 14, 1958.]

DOROTHY S. HENNEBERRY, Appellant, v. WILLIAM T. HENNEBERRY, Respondent.

*Assigned by Chairman Judicial Council.

126

· Joseph P. Henneberry for Appellant.

Shirley, Saroyan, Calvert & Peterson and J. Francis Shirley for Respondent.

PETERS, P. J.—Dorothy Henneberry brought this action against William Henneberry, alleging that she is the owner of an undivided one-half interest in certain real property in San Francisco, that William is wrongfully in possession of the

property against her will, and demanding restitution of the property to her. By answer, William denied that plaintiff owns any interest in the property. The trial court found that plaintiff is not the owner of any interest in the property in that the deed under which she claims is void because of lack of delivery. From the judgment so declaring, plaintiff appeals.

The case involves an unpleasant squabble between members of a family over property. The building involved is a pair of flats. In 1941 Thomas and Michael Henneberry, brothers, held title to the property in joint tenancy. There were two other brothers, Joseph and William. Dorothy Henneberry, the plaintiff, is the wife of Joseph. At the time of trial in 1956 Michael was confined in a state hospital as a mentally ill person and had been so confined for over 10 years. He had no guardian. Thomas, the other joint tenant, from 1949 until his death in 1955, was a very sick man, spending most of his time in hospitals or institutions.

The gift deed through which Dorothy Henneberry claims was executed on April 25, 1950. It is a gift deed purporting to convey all of the right, title and interest of Thomas in the property to Joseph. On this date Thomas was a patient in the San Francisco Hospital and had just undergone a serious operation. The deed was prepared by Joseph, who is an attorney. Why it was prepared, and at whose request, does not appear in the evidence. It was not recorded until several months after the death of Thomas, which occurred in 1955.

At the trial, in explanation of why he had not recorded the deed until after Thomas' death, and in describing the circumstances under which it was executed, Joseph testified that "the thought uppermost in my mind when I made that deed, I thought my brother was going to blow his top, I thought he would really go insane and the tormenting that that young fellow was going through—but as far as making it in contemplation of death, it probably was a secondary motive; but the primary motive that I had the deed made was, I thought Tom might blow his top."

Joseph testified that on the date the deed was executed he and Mrs. William Henneberry and the notary were in the room with Thomas; that he, Joseph, told Thomas that he had a deed to the property; that Mrs. William Henneberry vigorously objected; that Thomas reached over and grabbed the deed, took a pen from the notary public, and signed the deed; that the notary informed Thomas that the deed was a gift deed, and that he was there to notarize it; that after Thomas

signed the deed he handed it to Joseph without comment. According to Joseph, all of this occurred without Thomas uttering one word.

After the physical delivery of the deed, Joseph took it to the notary's office where a notary's seal was affixed, and then took it home and put it in a safe deposit box where it remained until several months after Thomas' death, when it was recorded. Joseph testified that "In fact, I was never going to record it, if he did the right thing with the property."

The testimony is to the effect that, after the deed was signed and physically delivered, both Joseph and Thomas intended that the property remain the property of Thomas, and both considered that Thomas was the owner of it until the time of his death. Joseph stated that he did not want to assert ownership because he wanted Thomas to have a place to come to after he got out of the hospital. Thomas always insisted that it was his property and that no one was going to get it away from him. Joseph testified that even if he had recorded the deed during the lifetime of Thomas, he would have considered Thomas as the owner. It is conceded that Joseph asserted no ownership over the house until after the death of Thomas, made no improvements, paid no taxes, even when he knew they were delinquent, did not collect the rents, did not pay any insurance premiums, and filed no gift tax return on the property.

In 1948 William Henneberry and his family moved into one of the flats at Thomas' request and upon Thomas' promise that if William would move in and take care of Thomas, William would have a home for the rest of his life. William and his family moved in, and, until Thomas' death, took care of Thomas when he was home. Thomas, during most of this period, was incapacitated and needed help, care and attention. William's wife acted as a nurse for Thomas, cooked for him, and fed and waited on him. When Thomas was in the hospital William or his wife visited him every visiting day. William collected the $25 a month rent for the other flat and bought things for Thomas that practically consumed the entire $25. In addition, William paid the taxes, insurance and maintenance costs.

On this evidence the trial court found that the plaintiff was not the owner of an undivided interest in the property for the reason that the gift deed to Joseph "is void and of no legal effect because of the lack of valid legal delivery thereof with intent to presently pass the title of Thomas A. Henneberry in

the property described. In executing said deed Thomas A. Henneberry, grantor, did not intend to presently divest himself of his title in said property and Joseph P. Henneberry, grantee, did not intend to presently receive and accept a title or ownership in said property.'' Judgment was entered accordingly and plaintiff appeals, challenging the correctness of the quoted finding.

The challenged finding is amply supported. Appellant seems to argue that because Thomas admittedly signed the deed, admittedly handed it to Joseph, and because Joseph admittedly recorded it, a valid legal delivery was shown as a matter of law, which can be attacked only on the grounds of fraud and undue influence. Such is not the law.

The rules applicable to a delivery of a deed are well settled. ▮ In addition to physical delivery, and an acceptance by the grantee, to constitute a valid delivery there must exist a mutual intention on the part of the parties, and particularly on the part of the grantor, to pass title to the property immediately. In other words, to be a valid delivery, the instrument must be meant by the grantor to be presently operative as a deed, that is, there must be the intent on the part of the grantor to divest himself presently of the title. ▮ Even if the document is manually delivered, but the evidence shows that the parties or the grantor intended the document to become operative only upon death, the document is testamentary in character and void as a deed. ▮ In determining this fundamental issue of intent, various presumptions and inferences arise in favor of the validity of the delivery because of due execution, manual transfer, possession of the document by the grantee, its acknowledgment and recordation. But these presumptions and inferences are all rebuttable. Declarations and acts of the grantor before and after the alleged delivery, and of the grantee afterwards, are admissible on this issue. ▮ Fundamentally, the question of intent is one of fact to be determined by the trier of the facts on all the evidence. (For a general discussion of these principles see 15 Cal.Jur.2d p. 477, § 79 et seq.; see also *Kelly* v. *Bank of America*, 112 Cal.App.2d 388 [246 P.2d 92, 34 A.L.R.2d 578].)

▮ In the present proceeding a prima facie case of a valid delivery was established by the evidence that Thomas signed the deed and handed it to Joseph, that the deed was acknowledged and recorded, and was in the possession of the

grantee. But that prima facie case was rebutted by Joseph's own testimony and by the testimony produced by William. Joseph admitted that after the date of the alleged delivery Thomas always considered that the property was his and frequently stated that no one would take it from him so long as he lived. Joseph also testified that he agreed with Thomas, and that he always wanted Thomas to have the place as his home as long as he lived. He did not consider that the property was his until after Thomas' death. Joseph filed no gift tax return, he paid no taxes, insurance premiums or maintenance expenses. He collected no rents and did not object to William's occupancy until after Thomas' death. Not one act of dominion over the property was performed by Joseph until after Thomas' death. Joseph stated that he always considered that the place was Thomas' as long as he was alive, and that he intended to record the deed only upon Thomas' death, or if he became insane. On the other hand, the evidence shows that after the date of the alleged delivery, Thomas, through the agency of William, continued to exercise complete dominion over the property and not only acted as if the property was his, but so stated. This evidence amply rebuts the prima facie case of delivery and amply supports the finding that the document was not to take effect until the death of the grantor and was, therefore, an attempt at testamentary disposition.

There are many cases in the books discussing these principles. But one needs to be mentioned. In *Counter* v. *Counter*, 104 Cal.App.2d 786 [232 P.2d 551], a gift deed was signed by the plaintiff and his wife and manually transferred to their son Richard. Nine years later the wife died, and Richard, who had possession of the deed, recorded it. The father brought an action to cancel the deed. He testified that after the deed had been signed he told Richard not to record it unless something happened to him. He testified that at all times after the alleged delivery he considered the property his, managed it, collected the rents, paid income tax on the sums so received, paid the cost of insurance, taxes and upkeep. Richard knew of these facts. Richard, prior to his father's remarriage after his mother's death, had never asserted any claim to the property, never attempted to collect the rents, or never offered to pay any of the expenses. Two days after his father remarried he recorded the deed. The trial court found that the deed had never been delivered. In affirming this finding this court stated (104 Cal.App.2d at p. 789) : ''Defendant's main contention is that the physical

delivery of the deed to defendant vested title in the grantee subject only to a life estate in the grantors, regardless of the circumstances of the delivery. He contends that such delivery bars any claim that the intention of the grantors was otherwise. This contention disregards one of the most important matters in connection with the delivery of a deed, which is, what was the intention of the grantors? 'The delivery of a deed is not effected by a mere manual tradition of the instrument, unless the act "be accompanied with the intent that the deed shall become operative as such" [citation] i.e., that it shall presently pass title, without the reservation of any right of revocation or recall. [Citation.] . . .' Physical delivery raises an inference that the grantors are immediately parting with the title. But that inference may be overcome by evidence showing that such was not the intention of the grantors. Here, while the circumstances were such as to support a conclusion, had the trial court made it, that the grantors intended to vest title reserving to themselves only a life estate, such a conclusion is not compelled. A very reasonable conclusion is the one drawn by the court, namely, that the grantors did not intend to part with the title but merely intended the deed as a testamentary disposition to take effect upon their death." The reasoning of this case is conclusive here.

 Appellant next contends that under section 13642 of the Revenue and Taxation Code, since the gift deed was made and physically delivered some five years before the death of the transferor, it must be determined, as a matter of law, that it was not made in contemplation of death and it must be conclusively assumed that the delivery was a valid and legal one. The section requires no such result. It provides:

"A transfer conforming to Section 13641 and made in contemplation of the death of the transferor is a transfer subject to this part, but no such transfer shall be deemed or held to have been made in contemplation of death if made more than three years prior to the death of the transferor.

" 'Contemplation of death' includes that expectancy of death which actuates the mind of a person on the execution of his will. The term is not restricted to that expectancy of death which actuates the mind of a person making a gift causa mortis."

It is quite apparent that this quoted section, and section 13644 of the Revenue and Taxation Code, also referred to by appellant, do not purport to define what is or is not a valid

delivery, but relate to the taxation of transfers without consideration, and that their purpose is to prevent the evasion of taxes. (See Rev. & Tax. Code, § 13648.) The tests set forth in the relied upon sections to determine whether a gift deed is or is not taxable are applied only after it has been established that there has been a valid delivery of the deed. The sections do not attempt to determine whether a valid delivery has taken place. (See 24 Cal.Jur.2d p. 31, § 17.)

■ Appellant places considerable reliance on the fact that the deed to Joseph was recorded, and seems to contend that such admitted fact raises a conclusive presumption in favor of delivery. The fact of recordation is important, but the presumption raised by it is rebuttable, not conclusive. The evidence in the record clearly rebutted that presumption. (See *Rousseau* v. *Hurtado,* 122 Cal.App.2d 705 [265 P.2d 580].)

■ Appellant refers to other presumptions and inferences that she claims support her case. Thus, she contends that under the provisions of section 1962, subdivision 2 of the Code of Civil Procedure "The truth of the facts recited, from the recital in a written instrument between the parties thereto, or their successors in interest by a subsequent title" must be conclusively presumed. This, indeed, is a conclusive presumption, but it obviously is not applicable to this case where the action is not against a party to the deed.

Other presumptions or inferences relied upon are either not applicable to the facts or are rebuttable. As already pointed out, all the rebuttable presumptions and the inferences in favor of appellant were rebutted by the evidence.

The other points raised do not require discussion.

The judgment appealed from is affirmed.

Bray, J., and St. Clair, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.