[Civ. No. 24376.   Second Dist., Div. Three.   Oct. 19, 1960.]

STEPHEN J. COFFEY, Respondent, v. WILLIAM
COOPER, Appellant.

David Welts for Appellant.

William J. Clark for Respondent.

FORD, J.—This is an appeal from a judgment in favor of
the plaintiff in an action to quiet title to real property.  The

contention of the appellant is that the trial court improperly limited the scope of the evidence bearing upon the issue of whether there had been delivery by the appellant to the respondent of a deed to the property.

The evidence which was received by the court will be summarized. The property consisted of a house and lot on Third Street in Los Angeles. The quitclaim deed under which the respondent claimed as grantee was dated October 16, 1951, and was signed by the appellant. The acknowledgment before a notary public was dated October 25, 1951. Mr. Coffey, the respondent, testified that Mr. Cooper, the appellant, handed the deed to him some time between October 16 and October 25, 1951. When the appellant gave him the deed, he told him to record it. He recorded it on March 6, 1957, some five years later. No revenue stamps were attached thereto. The respondent paid the taxes for 1951 and succeeding years. He received no reimbursement, or offer thereof, from the appellant. The respondent collected the rents and the appellant had no possession of the property in the period of time after October 25, 1951. The appellant testified that he learned that he was suffering from cancer in June, 1951. He took the deed to the respondent on October 28, 1951. He showed the deed to him and, after the respondent had examined it, the appellant placed it back in a large envelope and said, ''I would like to leave this with you, Mr. Coffey, for safekeeping, not to be recorded until after my death, and, if I recover from these ailments, you will return the quit-claim deed to me.'' The respondent said, ''Very well. I will take it and stow it away.'' The respondent then placed it in a book, put the book in a chest of drawers, and said, ''It will be safe there.'' About 1953, the appellant asked the respondent to return the deed to him because the appellant believed that he had fully recovered from his cancerous condition. The respondent, Mr. Coffey, replied that he could not find it. On March 14, 1955, the appellant signed and recorded a deed to the property in favor of himself and the respondent as joint tenants. This was after he had discussed the matter with the respondent who said that he thought that it was a very good thing to do. The purpose was to enable the appellant to claim his tax exemption as a veteran.

Throughout the trial, the trial court took the position that the only admissible evidence bearing upon the issue of delivery or nondelivery of the deed was what was said at the time the

466

deed was handed to the respondent by the appellant.[1] The nature of the proof which the appellant desired to offer is clear from the statements of his counsel to the court.[2] During the cross-examination of the respondent, he was asked if he had not managed the property prior to the time he received the quitclaim deed. An objection was sustained. Counsel for the appellant then stated: "What I intend to show, is to lay a basis as to the fact that there was this partnership agreement existing between the plaintiff and the defendant, and that it was the intention of the parties that with respect to this quitclaim deed, that the true intention of the parties pre-existing would be put into writing, so that Mr. Coffey's interest would be protected, and I want to lay a foundation to show the intention of the parties." At another point in the trial, a witness on behalf of the appellant testified that he typed the quitclaim deed for the appellant. He said that the appellant told him what he was going to do. When the witness was asked what the appellant said on that subject, the court sustained the objection of the respondent.

During the course of the trial, counsel for the appellant stated in substance that he wanted to show that when the appellant originally acquired title to the property there was an understanding that the respondent would manage the property and would receive a one-half interest in the property, and, upon the sale of the property, one half of the profits; that for many years both parties recognized the fact that the appellant had title to the property and that the respondent was acting as his agent; that prior to the deed in question the respondent had executed a lease with Foster and Kleiser as such agent and had collected rents and paid taxes as the agent of the appellant; and that after the handing of the deed to the respondent he had continued to act as the appellant's agent. He further stated that when an offer to purchase the property

---

[1]An instance of such a ruling is: "THE COURT: Well, I am going to restrict the testimony to verbal conversations here between the parties, and particularly it will have to be limited as to what was said on the delivery of the deed at the time of delivery. That is my opinion of law. I don't see how you can get away from it."

[2]We need not be concerned in this case with the form of the offer of proof. As stated in *Beneficial Fire & Casualty Ins. Co.* v. *Kurt Hitke & Co.*, 46 Cal.2d 517, at page 522 [297 P.2d 428]: "Where an entire class of evidence has been declared inadmissible or the trial court has clearly intimated it will receive no evidence of a particular class or upon a particular issue, an offer of proof is not a prerequisite to raising the question on appeal, and an offer, if made, may be broad and general." (See also *Heimann* v. *City of Los Angeles*, 30 Cal.2d 746, 757 [185 P.2d 597]; *Lawless* v. *Calaway*, 24 Cal.2d 81, 91 [147 P.2d 604].)

was made, it was accepted in January, 1957, by both the appellant and the respondent and thereafter the respondent recorded the quitclaim deed. He expressed his desire to show that both parties understood that a transfer of title would not take place until the deed was recorded and that such recordation would not take place unless the appellant should die as a result of his cancer. Counsel for the appellant said that he wanted to establish that the appellant's purpose in so using the deed was to protect the respondent's interest in the property in the event of the appellant's death since the respondent's interest was not evidenced by any writing.

The substantive law with respect to the matter of delivery is clear. (See *Hotaling* v. *Hotaling*, 193 Cal. 368, 381-383 [224 P. 455, 56 A.L.R. 734].) ▮▮ As stated in *Henneberry* v. *Henneberry*, 164 Cal.App.2d 125, at page 129 [330 P.2d 250]: "In addition to physical delivery, and an acceptance by the grantee, to constitute a valid delivery there must exist a mutual intention on the part of the parties, and particularly on the part of the grantor, to pass title to the property immediately. In other words, to be a valid delivery, the instrument must be meant by the grantor to be presently operative as a deed, that is, there must be the intent on the part of the grantor to divest himself presently of the title. ▮▮ Even if the document is manually delivered, but the evidence shows that the parties or the grantor intended the document to become operative only upon death, the document is testamentary in character and void as a deed." (See also *Counter* v. *Counter*, 104 Cal.App.2d 786, 789 [232 P.2d 551]; *Dinneen* v. *Younger*, 57 Cal.App.2d 200, 204-205 [134 P.2d 323].) In *Kelly* v. *Bank of America*, 112 Cal.App.2d 388, it was said, at page 396 [246 P.2d 92, 34 A.L.R.2d 578]: "If it were the intention of Arthur H. Kelly that the title to the property would pass to his son only in the event that the grantor did not survive his operation, then the deed is entirely inoperative as constituting an attempt to make a testamentary disposition of the property. This may only be done by a will executed as required by law. A deed, the purpose of which is intended to be testamentary, cannot be given effect." (See also *Gerard* v. *Gerard*, 62 Cal.App.2d 672, 679 [145 P.2d 702].)

The applicable rules as to the admissibility of evidence in a case involving the issue of whether there was delivery of a deed are broader than the rulings of the trial court would indicate. "In cases of this character the truth cannot always be elicited by focusing the evidence sharply on the precise

point in dispute. There are often sidelights of revealing power; and reasonable freedom must be accorded in judging the relevancy of evidence and sifting the facts.'' (*Morgan* v. *Matthieson,* 103 Cal.App. 510, 518 [285 P. 325].)

[█] Upon the factual question of delivery or nondelivery, evidence of the surrounding circumstances of the transaction is admissible. (*Chaffee* v. *Sorensen,* 107 Cal.App.2d 284, 288 [236 P.2d 851] ; *Lortz* v. *Phelps,* 57 Cal.App.2d 482, 487 [134 P.2d 811] ; *Stone* v. *Walsworth,* 115 Cal.App.2d 369, 374 [252 P.2d 39].) Cases involving factual matters akin to what was attempted to be shown by the appellant are not lacking. Thus, in *Johns* v. *Scobie,* 12 Cal.2d 618 [86 P.2d 820, 121 A.L.R. 1404], there was evidence that an uncle and nephew lived together and were jointly engaged in the cattle business on a parcel of land. The uncle signed a deed to a part of the property, the nephew being the grantee named therein. After the death of the uncle, the question of the effect of the deed was raised. The nephew testified that the understanding was that he would have the deed so that the nephew's interest in the property would be protected in the event of the uncle's death. The deed was not recorded until after the uncle's death. The Supreme Court said, at page 623 : ''The trial court did not expressly find on the issue of the delivery of the deed, but it is clear from the testimony quoted above that the grantor did not intend to relinquish all control over the property prior to his death, and therefore there was no legal delivery.'' (See also *McCarthy* v. *McCarthy,* 82 Cal.App.2d 166 [185 P.2d 821].)

[█] In cases involving the delivery of deeds, declarations of the alleged grantor made before and after the making of the deed are admissible upon the issue of delivery, and it is immaterial that such declarations are in the interest of the party producing them. (*Henneberry* v. *Henneberry, supra,* 164 Cal. App.2d 125, 129; *Kelly* v. *Bank of America, supra,* 112 Cal. App.2d 388, 394; see *Whitlow* v. *Durst,* 20 Cal.2d 523, 524 [127 P.2d 530].) █ Moreover, a witness may always testify to the state of his own mind when it becomes a material fact in the case. (*Cope* v. *Davison,* 30 Cal.2d 193, 200 [180 P.2d 873, 171 A.L.R. 667] ; *Howell* v. *Mays,* 107 Cal.App. 751, 753 [290 P. 898] ; *Schubkegel* v. *Gordino,* 56 Cal.App.2d 667, 674 [133 P.2d 475] ; *Peskin* v. *Squires,* 156 Cal.App.2d 240, 249 [319 P.2d 405].)

█ Under his pleading, the appellant was entitled to prove whatever right he had in the property. (*Hudson* v.

*West,* 47 Cal.2d 823, 827 [306 P.2d 807] ; *Furnivall* v. *Groves,* 154 Cal.App.2d 846, 847 [317 P.2d 117] ; *Selby* v. *Battley,* 149 Cal.App.2d 659, 665 [309 P.2d 120].)  Because the appellant was prevented from fully presenting his case, the present judgment cannot stand.

The judgment is reversed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied November 16, 1960, and respondent's petition for a hearing by the Supreme Court was denied December 14, 1960.