[Civ. No. 4152. Fourth Dist. Nov. 21, 1951.]

CLARENCE A. BALES, Respondent, v. JEAN FARLEY, Defendant; ORVILLE A. OMAN, Third Party Claimant and Appellant.

Martell Thompson for Third Party Claimant and Appellant.

Willis J. Clemons for Respondent.

GRIFFIN, J.—Appellant Orville A. Oman married defendant Jean Farley on October 16, 1948. Prior thereto respondent obtained a judgment against defendant Farley for $1,512.26, which judgment was unsatisfied. Subsequent to the marriage, on July 28, 1949, a writ of execution in that amount was levied on the automobile here involved and appellant filed a third party claim alleging that it was separate property.

The facts show that on November 3, 1948, appellant purchased a Ford automobile on contract for $1,634.88, payable $600 down and the balance in monthly payments. A check for $600 was drawn on appellant's bank account which he had opened prior to the time of his marriage. There were not sufficient funds in the account to meet the check in full at that time so, on November 4, Mrs. Oman deposited $285 to that account to meet the check on its presentation. On November 17, appellant closed that account and opened a joint account with his wife in the same bank. At the time of and subsequent to the marriage, appellant was employed and had a "take-home" pay of $250-270 per month. His wife was employed until Christmas of that year at $160 per month. All of their earnings and other monies received after marriage were deposited in the joint account. Mrs. Oman made five payments to the bank on the conditional sales contract from this checking account, which payments totaled $358.48. On May 14, 1949, Mr. Oman made the final payment of $899.70 on the contract. After hearing the trial court made an order finding that the automobile was not the separate property of the third party claimant but that it was community property of the claimant and his wife.

In support of the order and judgment respondent cites

the well-established rule in California that the presumption exists that all property acquired by the husband or wife after their marriage is community property; that the burden is on one who disputes the application of that principle to affirmatively prove that such property is in fact separate property, and that when separate and community properties are so commingled that it is impossible to identify them or trace the funds, the whole must be deemed to be community property. (*Falk* v. *Falk*, 48 Cal.App.2d 762 [120 P.2d 714].) The presumption is, of course, a rebuttable one. Whether the evidence adduced to overcome the presumption is sufficient for the purpose is usually a question for the trial court to determine. (*Wilson* v. *Wilson*, 76 Cal.App.2d 119, 125 [172 P.2d 568].)

It is appellant's position that the uncontradicted evidence shows that at least a considerable portion of the money that went into the purchase of the automobile was the separate property of appellant and, accordingly, appellant as the husband had a separate property interest in the automobile, at least to the extent of the down payment and in the proportion that the down payment bears to the total purchase price. He argues that the commingling of separate and community funds does not cause each to lose its respective character if such funds can be traced and identified, citing *Huber* v. *Huber*, 27 Cal.2d 784 [167 P.2d 708]; *Tomaier* v. *Tomaier*, 23 Cal.2d 754 [146 P.2d 905]; 3 Cal.Jur. 10-Yr. Supp. p. 504, § 26.

Appellant testified that he bought a Dodge car in 1946 for $650, and did not trade it in on the Ford car here involved because they would not allow him enough on it, and that he held it a while, fixed it up, and finally sold it to his parents for $350,—$150 down and the balance in payments "strung out"; that he deposited that money in his bank account and made payments on the Ford with it. He testified he obtained $300 from his brother; that his wife deposited $285 of that amount to his bank account to meet the $600 check issued the day before as a down payment on the Ford car; that he had about $800 before he went into the service in 1943, gave it to his parents to hold; that if he did not come back he intended it to be theirs to keep and if he did come back they should pay it back to him "as they wish"; that he sent home about $1,700 in allotments and gambling winnings while he was in the service; that his parents used it and invested it in real estate; that he entrusted his brother with

this money (which had been turned over to him by his parents) to go into the plumbing business with appellant, but that they never did go into business; that he received a check from his brother when he bought the car, for $300, which was a return of a portion of that money; and that he received $1,100 from him when he paid off the final payment on the car in May, 1949. On cross-examination it was shown that the check for $300 was not deposited with the bank as indicated by appellant. There was a deposit of $285 on that date. Appellant's brother testified he gave appellant $1,100 in May, 1949, which was money he owed him. He testified that as between his parents and his brother he kept no books or record of accounts but mentally figured that this was the amount due to appellant.

Apparently the court believed that the money turned over to appellant after his marriage was money borrowed by appellant from his brother, or that appellant did not sufficiently trace the funds deposited in the joint account which were claimed to be his separate property, or that they were so commingled with the community funds that they did not sufficiently retain their separate character.

There is considerable documentary evidence indicating that appellant and his wife treated the Ford car, as well as the Dodge car, after repairs made thereon, as their community property. Although the Ford car was purchased in appellant's name, the "purchasers or borrowers" statement to the bank gave the name of appellant's wife as a "source of other income" and stated that appellant would be assisted by her in making the contract payments. Appellant admittedly was delinquent in payments on several occasions. Appellant's wife, at appellant's suggestion, in January, 1949, wrote to the bank, to whom the contract had been assigned, stating:

"In regard to our loan, No. AD-3-7875, which is past due, we put some money into a '37 Dodge which we own, having it re-upholstered. It is now for sale.

"We will send you two months payment on the loan by Feb. 3, 1949, or sooner if we sell the car.

"Regardless of whether we sell the car or not we will send you $143.40 by Feb. 3rd. . . ."

Later she sent a letter to the bank as follows:

"We will mail you a check by May 11, for payment on our account. . . ."

In April, appellant wrote:

"In regard to your request for a receipt for our license

fees—we sent them in. . . . Please advise us for whatever help we may give you. . . ."

Later Mrs. Oman wrote the bank and asked that ". . . our acct.—Loan . . ." be changed to the "Santa Ana Branch."

Section 170 of the Civil Code provides that neither the separate property of the husband nor his earnings after marriage are liable for the debts of the wife contracted before marriage. Section 687 thereof provides that community property is property acquired by husband and wife, or either, during marriage, when not acquired as the separate property of either. ▮ The general rule is that where the commingling of the separate property with the community property is such that it is impossible to trace the funds, the whole will be treated as community property, upon the principle that the burden is upon the spouse claiming the property as separate property to establish its character as such, unless the community interests or funds are inconsiderable or where the separate property can still be traced. (*Estate of Bauer,* 79 Cal. 304 [21 P. 759] ; 5 Cal.Jur. 298, § 16 ; 3 Cal.Jur. 10-Yr. Supp. p. 524, § 40.) In 3 Cal.Jur. 10-Yr. Supp. p. 535, § 47, the presumption that monies borrowed during the marriage become community property is discussed. It is there stated:

"Money borrowed on personal security is certainly community property. But where money is borrowed upon the faith of the separate property of a husband or property is acquired with the proceeds of a loan on the credit of his separate property, it becomes his separate property"; and that property purchased with money borrowed by a married man or woman without security and repaid with community funds is deemed to be community property.

Under the confused testimony of appellant as to how he acquired the funds and as to the nature of the payments or loan by the brother to appellant, the court apparently believed the payments to be a loan, to be repaid from community funds.

It is true that under the evidence the trial court might well have held that the bulk of the funds used in the purchase of the car was traceable as the separate funds of the appellant. However, that is not the question before us. ▮ Findings on community interest are invariably accepted if there is some evidence to sustain them, and to prevail against them, appellant must show that there is no other inference, as a matter of law, than that the disputed property was the separate property of the appellant. (*Estate of Kane,* 80 Cal.App.2d 256, 266 [181 P.2d 751].) ▮ The true situation in rebuttal

of the presumption created by section 164 of the Civil Code can be shown by circumstantial as well as by direct evidence, and the inferences to be drawn from the evidence are for the trier of facts to determine so long as those inferences find reasonable support in the evidence given. (*Nichols* v. *Mitchell,* 32 Cal.2d 598, 609 [197 P.2d 550].)

We conclude that the questions involved, aided by the allowable presumptions, were factual questions for the trial court to determine. There is sufficient evidence to support the order and judgment. (*Estate of Kane, supra*; *Couts* v. *Winston,* 153 Cal. 686 [96 P. 357]; *Fennell* v. *Drinkhouse,* 131 Cal. 447 [63 P. 734, 82 Am.St.Rep. 361]; *In re Boody,* 113 Cal. 682 [45 P. 858]; *Estate of Sehabiague,* 47 Cal.App.2d 793 [119 P.2d 30]; *Miller* v. *Brode,* 186 Cal. 409 [199 P. 531]; *Opp* v. *Frye,* 70 Cal.App.2d 478 [161 P.2d 235]; *Heck* v. *Heck,* 63 Cal.App.2d 470 [147 P.2d 110].)

Order and judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.