[Civ. No. 16170.   First Dist., Div. Two.   Feb. 23, 1955.]

BLANCHE WILSON, Appellant, v. ARTHUR L. GREY et al., Respondents.

Charles Reagh for Appellant.

Rea, Frasse & Anastasi for Respondents.

KAUFMAN, J.—This is an appeal from a judgment of the Superior Court of Santa Clara County in favor of defendants in an action in the nature of a creditor's bill attempting to subject certain real property to the lien of a revived execution.

Appellant Blanche Wilson recovered judgment against respondent Arthur L. Grey in the sum of $5,000 costs, and interest, on August 3, 1933, in the Superior Court of the City and County of San Francisco, which judgment remains unsatisfied except for the sum of $56.18.

On May 8, 1951, another writ of execution was issued on the motion of the plaintiff directed to the Sheriff of Santa Clara County and delivered to him on May 9, 1951. This was subsequently returned unsatisfied.

The complaint herein, a creditor's suit in aid of execution was filed July 5, 1951, and named Arthur L. Grey and his wife, Hazel as defendants. It alleged that long after the transactions which culminated in the judgment, Arthur L. Grey transferred to his wife Hazel A. Grey, the real property in Santa Clara County which she sought to subject to the judgment. This transfer was alleged to have been by a deed executed by Arthur L. Grey on November 8, 1920, which was without consideration other than love and affection, and which was not recorded until July 3, 1933. It was alleged that the deed was withheld from record for the purpose of giving to Arthur L. Grey the fictitious appearance of possessing assets which might be subjected to the claims of creditors, and to arrange property matters so that the property could not be subjected to the debts of either husband or wife. Appellant also charged that the deed was made with intent to hinder, delay and defraud the future creditors of either husband or wife. There were allegations that at the time the deed was recorded the land was subject to encumbrances of approximately $5,000, which have since been discharged by community funds of Arthur L. and Hazel Grey, which would otherwise have been subject to execution on the judgment in favor of appellant.

Appellant claimed an estoppel in that she relied upon the appearance of title in Arthur Grey in trusting him in the transactions which led to the judgment. It was finally alleged that the title to the real property was at all times held in trust for the community.

Respondents in their answer pleaded that Arthur L. Grey was only one of the defendants in the action in San Francisco; that he had dealt with plaintiff only in his capacity as president of the Alviso Greyhound Breeders' Association, that the $56.18 received on execution was from the assets of that corporation; that the deed from husband to wife was for a valuable consideration. It was admitted that the deed was

not recorded until July 3, 1933. Also admitted was the entry of judgment, the revivor, the execution and its return unsatisfied. All other allegations of the complaint were denied, and special defenses of statute of limitations, laches, and homestead exemption were pleaded.

At the trial Mrs. Hazel Grey testified that about three months after their marriage, her husband deeded the property here in question to her for a consideration of $4,100 cash which was realized from property which had been owned by her previous to her marriage. At the time she purchased it from her husband there was a mortgage of $4,500 on the property, and at the time of recording the transfer, it was encumbered in the same amount, as well as a $500 encumbrance on the back lot. It was later refinanced. Mrs. Grey paid off the encumbrances with sums of $1,200 and $1,500 received from her mother, and $2,000 which she received in 1949 from her mother's estate. At the time she used her personal funds to pay off the encumbrances, Mrs. Grey knew that the remittitur in the prior action of *Wilson* v. *Grey*, 49 Cal.App.2d 228 [121 P.2d 514], had been filed many years before. She would not have used her personal funds to pay off the encumbrances if she had not believed that appellant had abandoned her attempt to attack this property. During these years Mrs. Grey worked occasionally, once taking the census for which she received $100 which she paid out on a loan to a Mrs. Feigion. Her home was used frequently for elections since the time of her marriage and she was usually on the election board.

Appellant Blanche Wilson testified that prior to loaning the $5,000 to Arthur Grey in 1933, she had her son and a Mr. Ryan investigate him. They reported to her that he had real property in his own name. If she had not received this information she would not have loaned him the $5,000 which was for the purpose of making change at the dog track operated by the Alviso Greyhound Breeders' Association of which Arthur Grey was president. Appellant stated that she would not have loaned the money if she had not had the report that he owned realty. She did not recall that her son or Mr. Ryan told her about any encumbrances on the property.

Respondent Arthur Grey admitted making an affidavit in opposition to the motion for execution in the Superior Court of San Francisco in which he averred that he had at all times mentioned in the affidavit of plaintiff resided in San

Jose and had been continuously engaged in the real estate business there, had been listed in telephone and city directories, had been at all times available for examination under oath; that an examination of the telephone and city directories would have disclosed that affiant was engaged as a salesman with the Cooper-Challen Realty Company; that his commissions would have been subject to garnishment, and that at no time had appellant made any attempt to garnish or levy execution on the earnings of affiant. It was further averred that he had at all times owned automobiles registered in his name, which were used openly for business and pleasure and garaged at his home in San Jose, and that if they had been levied upon in the five years following judgment, an amount would have been realized which would have satisfied the judgment at least to a substantial degree.

Arthur Grey testified that he had never told appellant that he owned property, nor had he assured her that she would never lose the money. He stated that the arrangement for advancing the money was made with Mrs. Wilson by a Mr. Post. He had made an effort to locate Mr. Post in Los Angeles, where he was last heard of but had been unable to locate him. Counsel for appellant also admitted that his efforts to locate Mr. Post had been in vain.

An agreement covering the arrangement for the advancement of funds by Blanche Wilson was signed by Blanche Wilson, T. M. Ryan, agent, and Alviso Greyhound Breeders' Association by Arthur L. Grey, President.

Appellant did not produce her son or Mr. Ryan to testify concerning the investigation which they were supposed to have made of Arthur Grey's personal resources, nor was there any showing made that these witnesses were not available.

Appellant contends that whatever the actual intent of the parties, it is a constructive fraud for the wife to leave her husband clad with the indicia of ownership. She says that the same parties have been before this court once before and that the estoppel of the wife to contend that this property was her husband's has been set at rest. Appellant apparently has so interpreted the opinion in *Wilson* v. *Grey*, 49 Cal. App.2d 228 [121 P.2d 514].

It is true that the court therein cited the general rule stated in 10 Ruling Case Law 743 to the effect that when a wife allows her husband to hold the record title of her property in his name she is estopped to assert her title thereto as against anyone who has extended credit to the husband *in*

*reliance on such ownership.* The case was reversed because the trial court had failed to make a finding on the issue of estoppel. It was said that evidence introduced at the trial would support a finding of estoppel *if believed by the trial judge.* ■ However, evidence similar to that introduced at the first trial was evidently *not* believed by the trial judge at the second trial for he found "that at no time did the plaintiff rely in any manner whatsoever on the apparent ownership of such real property by said defendant Arthur L. Grey because the record title to said real property was in said Arthur L. Grey; that it is not true that plaintiff made any investigation that showed that said Arthur L. Grey was the owner of said real property." Even though Mrs. Wilson's testimony that she relied upon the fact that title to the property was in Mr. Grey, the trial court is not bound to believe her testimony. There were circumstances which might have impaired her credibility in the eyes of the trial judge. He might well have concluded that if the testimony of Ryan and appellant's son had been produced, it would have been adverse. (See 27 Cal.Jur. 179, 180; *Langley* v. *Pacific Gas & Elec. Co.,* 41 Cal.2d 655 [262 P.2d 846]; *Royal Indem. Co.* v. *Sherman,* 124 Cal.App.2d 512 [269 P.2d 123].)

The trial court also found that the deed from husband to wife was for a full cash consideration; that it was not withheld from record to protect the property from creditors of either husband or wife; that it was not made with the intent to defraud creditors.

Since all of the above findings are adequately supported by the record it must be taken as established that the property was the separate property of Mrs. Grey which was not subject to execution under the judgment against her husband.

Appellant urges that at least part of the encumbrances and the property were paid from community property which was sufficient to have paid the judgment. ■ A wife who permits community property to be applied to her separate property may not assert title against a creditor armed with process. (*Bank of America* v. *Mantz,* 4 Cal.2d 322 [49 P.2d 279]; *Bales* v. *Farley,* 107 Cal.App.2d 642 [237 P.2d 686].) The evidence herein was that at least $4,700 of the approximately $5,000 of encumbrance was paid off with the separate property of Hazel Grey, received from her mother, and from her mother's estate. There is only one statement in Mrs. Grey's testimony which can be clearly interpreted as meaning that she at one time used $100 of community earnings toward

the payment of the encumbrance. There is no other evidence which conclusively shows that any community funds were used to pay off the encumbrance. The amount received for the use of the house for elections each year would be separate property, and this could account for the balance of the encumbrance above the sum of $4,700.

The trial court found that the cause of action set forth in the complaint was barred by section 343 of the Code of Civil Procedure. Appellant appears to contend that the return of a writ of execution unsatisfied revives the cause of action, but admits to finding no California case in point. The deed in the present case was recorded on July 3, 1933, and judgment was entered on August 3, 1933. A writ of execution was sued out on October 9, 1933, three months after recordation of the deed. It is now appellant's contention that in making the loan, she relied upon this particular real property which she had her investigators report on. If this were true, then she was certainly aware, after October 9, 1933, the date when the writ of execution was returned unsatisfied except in the amount of $56.18 with the report that the sheriff was unable to find any other property of the defendant in the County of Santa Clara not exempt from execution, that a fraudulent transfer had been made of this property. In the prior case of *Wilson* v. *Grey, supra,* in which complaint was filed in 1935, she attacked the transfer as fraudulent. Nine years elapsed between the reversal of that decision and the filing of this action.

Respondent suggests that a return of an execution unsatisfied is not necessarily a prerequisite to a suit in the nature of a creditor's bill to set aside a fraudulent conveyance, citing *Richardson* v. *Michel,* 45 Cal.App.2d 188 [113 P.2d 916], in which it is held that the period of limitation is not extended by delay in issuing execution. The case of *Sherman* v. *S. K. D. Oil Co.,* 185 Cal. 534 [197 P. 799], is not in point. It is concerned with the right of action against stockholders of a corporation on their liability in equity as holders of watered stock. In such cases execution must be returned unsatisfied to give the creditor notice of the insolvency of the corporation in order that he may know that he has the right to proceed against the stockholders on their subscription liabilities.

Appellant argues that any question of laches in applying for the writ of execution was settled by the superior court when it granted the writ of execution in 1951. (*Butcher* v.

*Brouwer*, 21 Cal.2d 354 [132 P.2d 205].) That court at that time only decided that appellant was entitled to a writ in that he had not been negligent in attempting to locate assets of the respondent Arthur Grey on which he was entitled to levy in satisfaction of the judgment. The question of the title of this property was not before the court in that proceeding. The matter was before the court on an affidavit of appellant in which he alleged that he was unable with due diligence to locate assets of respondent Grey on which he could levy.

Appellant maintains that there is no evidence to support the defense of laches. He admits that the notary who took the acknowledgment of the deed is dead, but says that appellant did not dispute the date of the deed nor its acknowledgment. He contends that there is no claim that any witness who could testify to any material thing could not be produced or that any material document is missing. However, as noted above, diligent search was made by both parties in vain for Mr. Post, a key witness, who was supposed to have been one of the parties who made the arrangements for the loan of the money. The trial judge's finding that witnesses who would have been favorable to defendant have died or moved beyond the jurisdiction since the previous trial between these parties is supported by the record. Also supported is his finding that ''records of the Bank of America National Trust and Savings Association, Santa Clara Branch, which made the loan to plaintiff out of which transaction her judgment against the defendant Arthur L. Grey and Greyhound Breeders' Association arose have been lost or destroyed, and the manager of that bank cannot now recall the details of said transaction because of said lapse of time.'' The question of laches must be determined in each case on the basis of its facts, and where there are facts from which the trial court may infer that there has been an unreasonable delay, that finding will not be disturbed on appeal. (*Gedstad* v. *Ellichman*, 124 Cal.App.2d 831 [269 P.2d 661].)

When the decision was rendered in 1942, reversing the decision of the trial court in favor of respondents herein, appellant did nothing toward getting the matter set for a new trial within a reasonable time, but allowed nine years to elapse, after which time the case was dismissed. Hazel Grey testified that she relied on the apparent abandonment of the action in applying her separate property to the discharge of the encumbrances on the property here in question. In

view of the long period of inaction on the part of appellant, it cannot be said that she was unreasonable in concluding that the attempt to attack this property had been abandoned.

Appellant does not attack the finding that the fifth defense of respondents, namely, that the property here involved is a homestead. At the trial appellant's counsel stipulated that the declaration of homestead was a valid homestead.

At any rate, appellant has made no showing that she followed the statutory procedure which is a prerequisite to an attack on property duly homesteaded, and this perhaps is the reason why the finding that the defense that this homesteaded property is true, is not challenged. (*Arighi* v. *Rule & Sons, Inc.,* 41 Cal.App.2d 852 [107 P.2d 970].)

We conclude that the findings of the trial court are supported by evidence and that there is no prejudicial error in the record before us.

Judgment affirmed.

Nourse, P. J., and Dooling, J., concurred.