Filed 9/21/16  Williams v. Rossi CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| CAROLYN WILLIAMS STALLWORTH,<br><br>　　　　Plaintiff and Appellant,<br><br>v.<br><br>PATSY J. ROSSI,<br><br>　　　　Defendant and Respondent. | B261438<br>(Los Angeles County<br>Super. Ct. No. BC453214) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle R. Rosenblatt, Judge.  Affirmed.

　　　　Law Offices of George E. Omoko and George E. Omoko for Plaintiff and Appellant.

　　　　John Clark Brown, Jr. for Defendant and Respondent.

Appellant Carolyn Williams Stallworth brought suit against respondent Patsy J. Rossi, and others, seeking to quiet title to property on 5th Avenue in Inglewood and to cancel a deed of trust assigned to respondent which permitted him to foreclose on the property.  The trial court granted summary adjudication on the cancellation cause of action, finding it barred by the statute of limitations.  After a bench trial, the court ruled for respondent on the quiet title claim, finding it subject to waiver and estoppel, and further finding that respondent was a bona fide purchaser for value.  We affirm.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Background Facts*[2]

In 2006, appellant owned four real properties.[3]  In addition, she had been awarded in a divorce settlement the property at issue in this litigation -- a house on 5th Avenue in Inglewood, then in the name of her ex-husband, Fred Stallworth.[4]  Appellant applied to Waldman Financial Group for a loan.[5]  Waldman informed

---

[1]     As explained below, we take issue with some of the trial court's factual and legal rulings, but follow the established rule that an appealed judgment or order correct on any theory will be affirmed regardless of the trial court's reasoning.  (*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1201.)

[2]     The background facts are derived from the trial court's findings set forth in its detailed statement of decision and from evidence presented at trial.  Except as specified below, the essential facts are not in dispute.

[3]     The properties consisted of a house on 113th Street and three vacant lots.  At trial, appellant testified the vacant land was worth approximately $65,000.

[4]     At the time, appellant had lived in the house on the 5th Avenue property for more than 30 years.  Appellant quitclaimed the property to her ex-husband in 2003.

[5]     Waldman Financial Group and its owner Michael Waldman will be referred to jointly herein as "Waldman."  In 2005, appellant had borrowed approximately $40,000 from Waldman using the 113th Street property as security, and used the funds to pay off a preexisting lien on that property.  In addition, she had taken out multiple other loans

*(Fn. continued on next page.)*

2

her that the amount she wanted to borrow required putting up the 5th Avenue property as security. Waldman prepared loan documents and a deed of trust covering the 5th Avenue property. On June 15, 2006, appellant signed these documents.[6] Waldman represented that if Fred did not transfer the property to appellant within three days the agreement would be "void," and that he would not record the deed of trust. Fred did not transfer the property to appellant within that time frame. Nonetheless, on July 10, 2006, Waldman recorded the deed of trust for the 5th Avenue property. On August 1, Waldman told appellant to come pick up a check, and disbursed approximately $100,000 to appellant. Subsequently, appellant received the balance of the proceeds.[7]

After the loan documents covering the 5th Avenue property were executed, respondent's sister, Leslie Day, who worked for Waldman, approached respondent about purchasing the note and deed of trust. Day had seen a title report, and was aware that appellant was not on the title to the 5th Avenue property.[8] In August

---

secured by her properties over the years. The court specifically found that appellant "was experienced with obtaining loans against her properties"; that she "understood that deeds of trust secure the notes"; and that she understood that to obtain a loan from a mortgage company, the loan must be secured by real property.

[6] The deed of trust was in favor of NXT Equities, Incorporated (NXT), an affiliate of Waldman. It stated that it secured a $200,000 "[r]evolving [l]oan [a]greement" or line of credit. "Waldman Financial" was the named trustee. On July 3, 2006, appellant executed deeds of trust in favor of NXT on her three vacant lots.

[7] There is no dispute that fees appellant had agreed to pay were taken out of the amount initially disbursed to appellant.

[8] Day testified at her deposition, that she was informed by another Waldman employee, Bryan Tran, that appellant had been awarded the property in a divorce proceeding and would be on the title by the time the loan was funded. Day did not investigate further. Tran denied having such a conversation with Day, and at trial, Day could not remember asking Tran about title. The court found both Day and Tran not credible as witnesses. It found that Day was respondent's agent, and that she was aware
*(Fn. continued on next page.)*

3

2006, Waldman transferred the note and deed of trust to respondent, who wired $200,000 to purchase the loan.[9]

In October 2006, appellant received a statement from Waldman indicating she had an outstanding loan secured by the 5th Avenue property. She questioned Waldman about the claim, but made payments from 2006 to 2007 to avoid losing the property. That same month, appellant learned that Waldman had recorded the deed of trust on the 5th Avenue property.

Throughout 2007, Heather Primo, Waldman/NXT's controller, spoke to appellant about delinquent payments on the loan. Primo testified that appellant never denied owing the funds, never said the trust deed for the 5th Avenue property was to have been destroyed, and never suggested the loan was to have been secured by different properties.

In June 2007, a notice of default was recorded against the 5th Avenue property. Appellant paid nearly $14,000 to reinstate the loan, and the default was rescinded. In August 2007, appellant received and recorded a deed from Fred, transferring the 5th Avenue property to her. In October 2007, a second default notice was recorded. That same month, appellant filed bankruptcy, listing the 5th Avenue property on her schedule D, and indicating that approximately $200,000 was owed to NXT.[10] After the bankruptcy was dismissed, she attempted to

_____

that appellant was not the title owner of the 5th Avenue property when respondent purchased the note and deed of trust. It imputed Day's knowledge to respondent.

[9]    Day contributed some of the funds.

[10]    In the bankruptcy proceeding, appellant represented that secured claims against the 5th Avenue property totaled approximately $485,000, including the $200,000 owed NXT, approximately $221,000 owed to the Small Business Administration (SBA) and approximately $38,000 owed to Wells Fargo. The bankruptcy filings included her agreement to make regular monthly payments to the holders of the three liens if the bankruptcy court confirmed her plan.

4

refinance the Waldman loan, but was unsuccessful.[11]

On May 8, 2008, a trustee's sale was held by Reliable Trust Deed Services (Reliable).  Respondent purchased title to the property by making a full credit bid of the debt owed by appellant ($231,859).  That same month, he and Day paid more than $46,000 to Wells Fargo and its trustee to prevent the bank from foreclosing.  They also began making payments to the SBA to keep that loan current, and made repairs to the property.  Respondent filed an unlawful detainer action in July 2008 that resulted in appellant's removal from the property in January 2009.

B.  *The Complaint*

In January 2011, appellant filed the underlying action for cancellation of deed and quiet title.  She named respondent, Waldman, NXT, Reliable, and others, seeking cancellation of deeds pertaining to the 5th Avenue property, including the deed of trust and the trustee's deed issued after the foreclosure, and to quiet title to the property.  The complaint alleged that Waldman told appellant she could borrow $200,000 on the 5th Avenue property.  When appellant signed the loan documents on June 15, 2006, including the deed of trust, Waldman told her that the documents would be "kept in abeyance" and not recorded until her ex-husband Fred executed a deed transferring the property, and that if Fred did not sign within three days, "the loan documents would become void . . . ."  A few weeks later, appellant told Waldman that Fred had refused to sign the deed.  Appellant alleged that thereafter she and Waldman entered into a different loan transaction involving the three

---

[11]  During this period, appellant executed two additional deeds of trust purporting to transfer percentages of the 5th Avenue property to a trust and another lender.

vacant lots, and she believed that the funds she received from Waldman were the result of a loan secured by the three lots.

The complaint stated that in October 2006, appellant received a statement in the mail and realized that Waldman claimed she owed money on the 5th Avenue property. When she asked Waldman to explain, Waldman told her to make payments or she would lose the property, and that if she made payments for six months, she would be able to refinance. Appellant made payments for a few months. After Fred transferred the property to her, Reliable issued a notice of trustee's sale, which resulted in transfer of title to respondent and appellant's eviction.

The cancellation cause of action alleged that Waldman and respondent "fraudulently obtained [appellant's] interest in [the 5th Avenue property] by surreptitiously obtaining a purported transfer that [appellant] did not authorize and was unaware of at the time that title to [the property] was in Fred Stallworth's name." It also alleged that respondent and Reliable "failed to comply with statute" before conducting the foreclosure sale.[12] The quiet title cause of action alleged that Waldman, respondent and various other defendants "claim some right, title, estate, lien, or interest in and to 5th Avenue" based on a "void deed."

C. *Respondent's Motion For Summary Judgment*

In April 2013, respondent moved for summary judgment. He contended that judgment should be granted on appellant's claims for cancellation and quiet title on

---

[12] The complaint did not specify how respondent and Reliable "failed to comply with statute"; nor did it suggest that the alleged illegality was Reliable's failure to be appointed trustee of record prior to conducting the foreclosure sale. To the contrary, the complaint specifically alleged that respondent "substituted [Reliable as] a new trustee" after learning of Fred's transfer of title to appellant, and that "[a]s [of] September 11, 2007, [Reliable] had become the 'duly appointed Trustee' of the deed of trust . . . ."

6

the ground that he was a bona fide purchaser for value unaware of the representations made to appellant by Waldman when he purchased the deed of trust, specifically the promise that the loan agreement would be void if appellant's ex-husband Fred failed to transfer the 5th Avenue property to her. Respondent further contended that both claims were time barred. Finally, respondent contended that the causes of action for cancellation and quiet title were barred by principles of res judicata as a result of the unlawful detainer proceeding.

Appellant disputed that respondent was a bona fide purchaser, and contended that in any event, the trust deed was void because she had never validly delivered it to Waldman. She asserted the claims were not time-barred, first, because the deed of trust was void and could be cancelled at any time; second, because the five-year statute of limitations of Code of Civil Procedure section 318 applied; and third, because the statute of limitations did not begin to run until respondent filed the unlawful detainer action in 2008. She contended that the unlawful detainer action could not bar claims unrelated to the conduct of the trustee's sale.

The trial court granted summary adjudication on the cancellation cause of action, finding that it was based on fraud and concluding that the three-year statute of limitations set forth in Code of Civil Procedure section 338, subdivision (d), governing actions for relief on the ground of fraud or mistake, applied.[13] The trial court denied summary adjudication on the quiet title cause of action, finding respondent had failed to establish as a matter of undisputed fact that he was a bona

---

[13] The court also determined that appellant's separate claim for fraud and misrepresentation was time barred under Code of Civil Procedure section 338, subdivision (d). Appellant does not seek to revive this claim.

7

fide purchaser, the elements of res judicata, or that the statute of limitations had run.

### D. *Court's Findings After Trial*

After a bench trial at which the evidence established the facts outlined above, the court found in favor of respondent on the claim for quiet title, concluding that the claim was precluded by waiver and estoppel.[14] In this regard, the court found that appellant received a loan from Waldman, made payments, did not bring any legal challenge to the debt, did not seek to cancel any recorded instrument, and did not file an adversary proceeding in the bankruptcy court to set aside the debt. The court further found that respondent had been injured by appellant's delay, in that he expended funds to pay off Wells Fargo's senior debt and to make repairs to the property. The court also concluded that appellant was a bona fide purchaser for value.

The court made a number of specific factual findings of significance to this appeal. It found that appellant had received the $200,000 in loan funds described in the deed of trust. It found that respondent had paid approximately $200,000 to Waldman to obtain assignment of the note and deed of trust. Although the court found that respondent was, or should have been, aware through his agent Day that the property was not in appellant's name at the time of the assignment, it did not find he was aware of any promises made to appellant by Waldman. The court further found that there had been no valid delivery of the deed of trust on June 15,

---

[14] The court found that the statute of limitations did not bar the claim, applying the five-year statute of limitations contained in Code of Civil Procedure section 318.

8

2006 because "the intention of the parties was to transfer title at a later time if a certain condition were to occur within three days." This appeal followed.[15]

## DISCUSSION

A. *Substantial Evidence Supported The Trial Court's Finding That Appellant received The Loan Proceeds*

Appellant disputes that substantial evidence supported her receipt of the $200,000 in loan proceeds described in the deed of trust and in the billing statements sent to her. Heather Primo, the controller for Waldman and NXT, testified that she specifically remembered writing the check to appellant for the initial draw of $98,000, and an additional check for the remaining amount. Primo also authenticated a borrower's statement for January 2007, which indicated the full $200,000 had been advanced as of that date. When the loan went into default, Primo contacted appellant telephonically nearly every week. Appellant said she was trying to refinance, but never stated or indicated she owed a lesser amount than indicated on the statements. Moreover, when appellant filed her bankruptcy petition, she attached a schedule indicating she owed an obligation of approximately $200,000 under the NXT deed of trust. This action provided further

---

[15] Appellant contends the trial court erred in granting summary adjudication on the cancellation claim on the ground the statute of limitations had run. (Cf. *Salazar v. Thomas* (2015) 236 Cal.App.4th 467, 476-481, 482 [statute of limitations for quiet title action does not run against a party as long as he or she is in exclusive and undisputed possession of the land, and notices of default from a lender are "not sufficient to dispute or disturb plaintiffs' possession"], with *Ankoanda v. Walker-Smith* (1996) 44 Cal.App.4th 610, 616-618 [once landlord learned tenant was not going to reconvey disputed portion of property, her possession was no longer "'exclusive and undisputed,'" and statute of limitations commenced running].) Because we affirm the trial court's ruling that appellant's claims were precluded by the doctrines of waiver and estoppel and further find that respondent's status as a bona fide purchaser protected his title from appellant's claims, we need not address whether the statute of limitations barred either claim.

evidentiary support for the trial court's finding. (See *In re Standfield* (Bankr. N.D.Ill. 1993) 152 B.R. 528, 531 [information in verified schedules and statements filed by debtors may be deemed evidentiary admissions].) The evidence was sufficient to establish that appellant received the loan proceeds.

B. *The Trust Deed Executed By Appellant Was Not Void*

"A deed is a written instrument conveying or transferring the title to real property." (*Estate of Stephens* (2002) 28 Cal.4th 665, 671-672.) It takes effect when signed by the grantor and unconditionally delivered to the grantee. (Civ. Code, §§ 1056, 1091.)[16] In the absence of such delivery a deed is void. (3 Miller & Starr, Cal. Real Estate (4th ed. 2015) Deeds and Descriptions, § 8:41, p. 8-116; *Reina v. Erassarret* (1949) 90 Cal.App.2d 418, 426-427; see *Luna v. Brownell* (2010) 185 Cal.App.4th 668, 673.)[17] "The rules applicable to a delivery of a deed are well settled. In addition to physical delivery, and an acceptance by the grantee, to constitute a valid delivery there must exist a mutual intention on the part of the parties, and particularly on the part of the grantor, to pass title to the property immediately. In other words, to be a valid delivery, the instrument must be meant by the grantor to be presently operative as a deed, that is, there must be the intent

---

[16]    Although the instrument executed by appellant was a deed of trust, the parties do not dispute that the principles governing grant deeds are equally applicable here. (See *Wutzke v. Bill Reid Painting Service, Inc.* (1984) 151 Cal.App.3d 36, 43 ["The fact that a deed of trust conveys a more limited interest in property than a grant deed [citation] does not mean that forged documents involving that interest should be treated differently than documents involving other interests"].)

[17]    Forged deeds also are void and of no legal effect, as are deeds executed under a misunderstanding of the nature of the document being signed. (*Schiavon v. Arnaudo Brothers* (2000) 84 Cal.App.4th 374, 378; *Fallon v. Triangle Management Services, Inc.* (1985) 169 Cal.App.3d 1103, 1106; *Erickson v. Bohne* (1955) 130 Cal.App.2d 553, 555-556.) Here, there is no dispute that appellant executed the trust deed and that she was aware of its nature and purpose when she signed it.

10

on the part of the grantor to divest himself presently of the title." (*Henneberry v. Henneberry* (1958) 164 Cal.App.2d 125, 129.)

Here, the court found the intention of the parties on June 15, 2006 was to transfer title at a later time, hence, there was no delivery. Whether or not the parties had the required intent, and whether there has been a legal delivery of the deed sufficient to transfer the title to the grantee, "are questions of fact to be determined from all of the circumstances surrounding the transaction." (3 Miller & Starr, *supra*, Deeds and Descriptions, § 8:42, p. 120; accord, *Henneberry v. Henneberry*, *supra*, 164 Cal.App.2d at p. 129.) "If there is any evidence to sustain the conclusion of the trial court, it will not be disturbed on appeal. However, an appellate court will reverse a trial court when there is not substantial evidence to support the conclusion of the trial court." (3 Miller & Starr, *supra*, § 8:42, p. 8-121; accord, *Knudson v. Adams* (1934) 137 Cal.App. 261, 268 ["[T]he trial court's determination that the grantor did not intend to divest herself of title is not conclusive upon a reviewing court if there is no conflict in the evidence and if it unmistakably indicates the existence of an intention to part with title"].) Our review of the record convinces us that the court's "no delivery" finding is not supported by substantial evidence.

When the grantee has been given physical possession of a duly executed deed, there is a presumption of valid delivery. (*Luna v. Brownell*, *supra*, 185 Cal.App.4th at p. 673; *In re Estate of Pieper* (1964) 224 Cal.App.2d 670, 685; 12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, § 295, p. 352.) In addition, "[r]ecordation is prima facie evidence of delivery." (Witkin, *supra*, Real Property, § 295, p. 352; accord, *Henneberry v. Henneberry*, *supra*, 164 Cal.App.2d at pp. 129-130.) Indeed, "[r]ecordation coupled with manual delivery raises a strong presumption, which can be overthrown only by very clear proof." (Witkin, *supra*, § 295, p. 352.)

11

The clear proof necessary to overcome the presumption of valid delivery was absent from the record here. It was undisputed that appellant, a businesswoman, was well-versed in the procedures surrounding real property secured loans. She had obtained many such loans in the past, and had executed multiple deeds of trust. When she approached Waldman for a loan, she was not the record owner of the 5th Avenue property. However, she held a valid legal interest in the property, having been awarded it in her divorce decree, and fully anticipated obtaining record title. She testified that Waldman called her to come sign some papers "to see if we can get you the [$200,000] loan," and she agreed. When she arrived, paperwork for a loan on the 5th Avenue property, including a deed of trust, were placed before her. She signed them and left them with Waldman. To support her contention that she lacked intent to transfer, she testified that after she signed, Waldman said: "[I]n three days [the executed documents] will be void if Fred doesn't transfer the deed back to your name." This was an expression of Waldman's intent, not appellant's. Appellant expressed no intent other than to create a deed of trust on a property in which, by virtue of the family court order, she held a legal interest in exchange for a substantial loan. Moreover, a party's intent with respect to delivery may be determined from his or her statements and actions subsequent to the time the deed is signed. (*Osborn v. Osborn* (1954) 42 Cal.2d 358, 363-364; 3 Miller & Starr, *supra*, Deeds and Descriptions, § 8:42.) After executing the deed of trust, appellant took the $200,000 in loan funds offered by Waldman. By no later than October 2006, she learned the deed of trust had been recorded, but never sought to rescind the loan agreement. She discussed the overdue payments with Waldman/NXT's controller on numerous occasions without ever suggesting that use of the 5th Avenue property to secure the loan was inappropriate. She paid to remove the June 2007 notice of default. She filed for bankruptcy and listed the deed of trust as a $200,000 secured obligation, without

12

indicating she disputed it. Indeed, she promised to make regular payments on the loan should the bankruptcy court approve her plan. In short, nothing in the evidence suggested appellant did not intend to immediately convey an interest in the property when she executed and delivered the trust deed to Waldman on June 15, 2006. The court's contrary finding was not supported by substantial evidence.

While it is true that Waldman expressed the intent to delay acceptance of the deed (see *Reina v. Erassarret*, *supra*, 90 Cal.App.2d at p. 426 [assent of grantee is necessary in order to make a delivery effective and deed operative], a deed may become operative by later acts of the parties. (See *Marlenee v. Brown* (1943) 21 Cal.2d 668, 679 ["[A]lthough a deed in the hands of a grantee may be ineffective because unaccompanied by the intention of the grantor that it should be legally effective, it may subsequently be made operative by the grantor's recognition of the title as being in the grantee. [Citation.] Although such recognition is usually termed a 'ratification' of delivery, a more accurate statement would be that the recognition of title in the grantee is, in itself, a delivery by the grantor, that is, an expression of intention by him that the instrument, which has already passed into the grantee's hands, should effect the transfer of title"].) Waldman signaled his acceptance of the grant by funding the loan, recording the deed of trust, and assigning the note and deed of trust to respondent. In short, while Waldman's June 15 statement may have indicated a lack of present intent to accept the transfer of title as the trial court found, his later actions compel the conclusion that he accepted the title transferred to him and the deed of trust was not void.

C. *The Condition That The Record Title Be In Appellant's Name Was For The Benefit Of The Lender And Its Assignees*

We have concluded the deed of trust was not void. We further conclude it was not voidable by appellant. Appellant essentially asserts that because Waldman

13

conditioned the loan on her ex-husband's transferring record title to her, she held the option of deciding whether to waive that condition or rescind the entire agreement. We disagree. "It is well settled a contracting party may waive conditions placed in a contract solely for that party's benefit." (*Sabo v. Fasano* (1984) 154 Cal.App.3d 502, 505; see, e.g., *WYDA Associates v. Merner* (1996) 42 Cal.App.4th 1702, 1714 [contingency that buyer of real property will obtain acceptable financing is for the benefit of the buyer and waivable only by the buyer; contingency that buyer obtain such financing within certain period of time is for the benefit of the seller and waivable only by the seller]; *FDIC v. LSI Appraisal, LLC* (C.D. Cal., April 25, 2012, No. SACV 11-0706 DOC (ANx)) [2012 U.S. Dist. LEXIS 58008, p. *4] [condition stating bank was not obligated to purchase services of appraiser unless written contract was executed was for benefit of the bank, and could not be raised by appraiser as a defense to bank's breach of oral contract action].)

The practice of ensuring that record title is in the name of the borrower prior to funding a loan benefits the lender, not the borrower. When Waldman decided to go ahead with the loan, title to the 5th Avenue property was still in Fred's name notwithstanding the family court order awarding it to appellant. But Waldman could rationally have decided to fund the loan in the expectation that the property would be transferred to appellant, as it eventually was. Waldman's decision to go ahead with the loan despite the unfulfilled condition placed his company and the investor at risk. It did no harm to appellant, who received the $200,000 loan on the agreed terms without providing the agreed security. Accordingly, appellant had no basis to rescind the deed of trust.

14

D. *Appellant Waived Any Right She May Have Had To Contest The Validity Of The Trust Deed*

Even were we persuaded that the contingency concerning title to the property was intended by Waldman to induce appellant to execute the deed of trust, we would agree with the trial court that appellant waived her right to rescind.

"[A] party who has been fraudulently induced into a conveyance can waive his right to rescind, if, after full discovery of the fraud, the party takes steps to affirm the transaction." (*Channell v. Anthony* (1976) 58 Cal.App.3d 290, 304.) "'The waiver may be either express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right.'" (*Old Republic Ins. Co. v. FSR Brokerage, Inc*. (2000) 80 Cal.App.4th 666, 678; accord, *Gaunt v. Prudential Ins. Co.* (1967) 255 Cal.App.2d 18, 23 ["'A waiver may occur (1) by an intentional relinquishment or (2) as "the result of an act which, according to its natural import, is so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished"'"].) "'Whether or not a person has ratified a voidable contract, or elected to affirm it rather than to rescind it, depends primarily on his intention, and this is shown by his declarations, his acts, or his conduct . . . .'" (*Bank of America v. Lamb Finance Co*. (1956) 145 Cal.App.2d 702, 719.) Generally, a party seeking to avoid a contract must "provide the other party to the agreement with '"prompt notice"'" and an "'"offer to restore the consideration received."'" (*Village Northridge Homeowners Assn. v. State Farm Fire & Casualty Co*. (2010) 50 Cal.4th 913, 921; see Civil Code, § 1693 [relief based on rescission will not be denied because of delay in giving notice or delay in tendering restoration "unless such delay has been substantially prejudicial to the other party," and court may make granting relief conditional on "tender of restoration"].) Whether the right to rescind has been waived is a

15

question of fact for the trier of fact to pass upon. (*Bank of America v. Lamb Finance Co.*, *supra*, 145 Cal.App.2d at p. 719.)

Appellant did not immediately seek to rescind the loan agreement when Waldman told her to come in and pick up a check, claiming to have been unaware when she first received loan funds that the loan was secured by the deed of trust on the 5th Avenue property or that it had been recorded. However, she became aware of these facts in October 2006, a few months afterward, when she received a statement from Waldman and learned the trust deed had been recorded. She did not seek to rescind the allegedly fraudulent loan transaction. Instead, she made loan payments and attempted to find new financing. She did not claim to have been defrauded or demand the contract be rescinded when discussing payments with Waldman/NXT's controller. The first time the loan went into default, she cured it. The next time, she petitioned for bankruptcy, listing the deed of trust and the $200,000 loan as an outstanding obligation without attempting to dispute it in the bankruptcy court. She represented to the bankruptcy court she would make regular payments if the court confirmed her plan. Her actions led respondent to believe the deed of trust was valid and to take costly steps to protect his interest in the property. Appellant stood silent as respondent not only undertook the expense of foreclosure, but also paid off one senior lien, brought another current, and made repairs to the property. She did not raise her claim of having been fraudulently induced to enter into the loan agreement until nearly five years after she entered into it and nearly three years after the foreclosure. On these facts, the court's finding that appellant was precluded from reclaiming title to the 5th Avenue property by waiver was amply supported by the evidence.

16

E.  *Respondent's Status As A Bona Fide Purchaser For Value Precludes Appellant From Rescinding The Trust Deed*

Having concluded that the promise on which appellant seeks to rely to cancel the deed of trust was a contingency for the benefit of the lender and its assignees, and that to the extent appellant relied on this promise in executing the loan documents, she waived any right to rescind by her actions in the years that followed, we nonetheless address whether respondent was a bona fide purchaser for value (BFP).  We conclude that the trial court's finding that respondent was a BFP is supported by substantial evidence and that respondent's BFP status provides a separate ground for affirming the decision.

As discussed, the deed of trust was not void.  Where a deed of trust is not void, but merely voidable, it may be relied on and enforced by a BFP.  (*Schiavon v. Arnaudo Brothers*, *supra*, 84 Cal.App.4th at p. 378; *Fallon v. Triangle Management Services, Inc.*, *supra*, 169 Cal.App.3d at p. 1106.)  It is a well-established principle of law that "'a bona fide purchaser is not chargeable with the fraud of his predecessors and takes a title purged of any anterior fraud affecting it and free from any equities existing between the original parties.  [Citations.]'" (*Melendrez v. D & I Investment, Inc*. (2005) 127 Cal.App.4th 1238, 1256-1257.)  "[I]t is an equally well-established principle of law that any purchaser of real property acquires the property subject to prior interests of which he or she has actual *or constructive* notice."  (*In re Marriage of Cloney* (2001) 91 Cal.App.4th 429, 437.)  A BFP has constructive notice of "those matters that could be located by a diligent title search."  (*Dyer v. Martinez* (2007) 147 Cal.App.4th 1240, 1243.)

17

The trial court found that respondent paid value -- $200,000 for the note and deed of trust.[18] When respondent transferred the funds to Waldman, he had notice, through the knowledge of his agent Day, that Fred Stallworth, appellant's ex-husband, held title to the property. This may have precluded him from contesting an interest asserted by Fred but had no bearing on the claim raised in this lawsuit -- that Waldman defrauded appellant by inducing her to execute the deed of trust on false pretenses. There was no evidence that he was aware of that claim until January 2011, when appellant filed her complaint. Accordingly, he took title free and clear of that claim. Although appellant did not hold title to the property when she executed the deed of trust, respondent was entitled to the benefit of Civil Code section 2930, which provides: "Title acquired by the mortgagor subsequent to the execution of the mortgage, inures to the mortgagee as security for the debt in like manner as if acquired before the execution." As explained in *Perego v. Seltzer* (1968) 260 Cal.App.2d 825, 829: "This code section is fully applicable to trust deeds [citation], and it is well settled that a trust deed creates a valid lien on real property to secure a debt for which it is executed, even though the trustor has no title to the property at the time of the execution of the instrument, provided he subsequently acquires title thereto during the life of the deed of trust."

In short, although appellant acquired title after executing the deed of trust, because she did so prior to the May 2008 trustee's sale, under Civil Code section 2930, her acquisition of title inured to respondent's benefit, and allowed him to

---

[18] Appellant makes an unconvincing attempt to contest that finding by pointing to such "discrepancies" in the evidence as respondent's stating at one point that he paid $200,000 and at another that he paid $199,000. Minor discrepancies in the evidence do not present a basis for this court to overturn the trial court's findings. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) "Any contradictions . . . or other weakness in the witness's testimony are matters to be explored on cross-examination and argued to the trier of fact." (*People v. Robertson* (1989) 48 Cal.3d 18, 44.)

foreclose on the deed of trust as if appellant owned title to the 5th Avenue property when she executed it.[19]

F. *Appellant Is Estopped From Contesting the Validity Of The Trust Deed*

The trial court found that regardless of whether the deed of trust was void, appellant's claim for quiet title was precluded by the doctrine of estoppel. Although we affirm the trial court's decision on the multiple grounds discussed above, we address this ruling.

"'[E]stoppel is applicable where the conduct of one side has induced the other to take such a position that it would be injured if the first should be permitted to repudiate its acts.'" (*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd*. (1994) 30 Cal.App.4th 54, 59.) The doctrine "'is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment.'" (*Oakland Raiders v. Oakland-Alameda County Coliseum, Inc*. (2006) 144 Cal.App.4th 1175, 1189.) "The traditional elements of estoppel are: '"(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury."'" (*Ibid.*) The doctrine of estoppel has been codified in Evidence Code section 623, which provides: "Whenever a

---

[19] In her reply brief, appellant contends respondent did not plead Civil Code section 2930 as an affirmative defense and therefore forfeited reliance on that statute. Appellant cites no authority for the proposition that a party seeking to rely on this provision must plead it as an affirmative defense, and we are aware of none. We note that respondent affirmatively pled as a defense that he was a BFP.

party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." (See also Civ. Code, § 3543 ["Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer"].)

Even where a deed is void, a grantor may be estopped from cancelling it or reversing a conveyance if he or she unreasonably delays in undertaking steps to do so and the delay causes harm to an innocent party. (*Baillarge v. Clark* (1904) 145 Cal. 589, 592-594 [where deed transferring title from wife to husband was void for nondelivery, wife was estopped to assert a claim to title where she was informed of husband's transfer to innocent purchaser within 10 days, but did and said nothing while transferee improved the property]; *Green v. MacAdam* (1959) 175 Cal.App.2d 481, 486 ["'An innocent purchaser taking a void instrument can . . . find protection in the doctrine of estoppel, where circumstances are presented which establish negligence or some other misconduct by the other party, which contributed to the loss'"]; *Crittenden v. McCloud* (1951) 106 Cal.App.2d 42, 48-49 [both grantor whose name had been forged on deed by his wife and his transferee estopped from cancelling deed where grantor said nothing to wife's grantee when asked when the couple was moving out, received some of the cash proceeds of wife's sale, participated in purchasing a new property with proceeds of wife's sale, and remained silent for a lengthy period as wife's grantee expended funds to improve the property]; *Merry v. Garibaldi* (1941) 48 Cal.App.2d 397, 401 [owner of premises estopped to cancel forged deed of trust where her silence after learning of the forgery prevented lender of the money paid to forger from learning of fraud in time to bring action to recover it].)

By October 2006, a few months after she executed the deed of trust, appellant was apprised of all the facts she now claims rendered it void. Her

20

conduct thereafter -- making payments, seeking to refinance, curing the first default, remaining silent in discussions with Waldman/NXT's controller, petitioning for bankruptcy and listing the loan as an obligation without disputing it -- would have led any reasonable person to believe the deed of trust was valid. Respondent, ignorant of any challenge by appellant to his right to foreclose, relied to his detriment by bearing the expenses of a foreclosure, paying off a senior lender, paying another lender to keep the loan current, and repairing the property. This was sufficient evidence to establish estoppel, as the trial court found.[20]

G. *The Trustee's Deed Was Not Invalid or Void*

Citing *Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868 (*Dimock*), appellant contends the trustee's deed transferring legal title to respondent after the May 2008 foreclosure sale was void, because respondent introduced no evidence of a recorded substitution naming Reliable as trustee in place of Waldman Financial, the trustee named in the original deed of trust.[21]  In *Dimock*, the parties

---

[20]     Quoting *Yvanova v. New Century Mortgage Corp*. (2016) 62 Cal.4th 919, 929, appellant contends:  "A void contract is without legal effect.  [Citation.]  'It binds no one and is a mere nullity.'  [Citation.]  'Such a contract has no existence whatever.  It has no legal entity for any purpose and neither action nor inaction of a party to it can validate it . . . .'"  *Yvanova* did not address estoppel.  "'It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court.  An opinion is not authority for propositions not considered.'"  (*Kinsman v. Unocal Corp*. (2005) 37 Cal.4th 659, 680; accord, *Santisas v. Goodin* (1998) 17 Cal.4th 599, 620 [appellate decision is authority "only 'for the points actually involved and actually decided'"].)

[21]     As explained in *Dimock*:  "By statute the Legislature has permitted the beneficiary of a deed of trust [the lender or its assignee] to substitute, at anytime, a new trustee for the existing trustee.  Under the governing statute the substitution is made by simply recording a document evidencing the substitution.  (Civ. Code, § 2934a, subd. (a).)  By its terms the statute provides that after such a substitution has been recorded, 'the new trustee shall succeed to all the powers, duties, authority, and title granted and delegated to

*(Fn. continued on next page.)*

presented evidence establishing that the lender recorded a substitution of trustee in August 1996, substituting Calmco as trustee in the place of Commonwealth (the trustee named in the original deed of trust), but that Commonwealth conducted the trustee's sale a month later, giving the buyer a deed. (*Id*. at pp. 872-873.) The appellate court found that under these undisputed facts, Commonwealth had no power to convey the property, and that the deed issued at the trustee's sale was void. It directed the trial court to enter a judgment quieting title in favor of the original owner, "subject to such encumbrances as existed at the time of the purported sale by Commonwealth." (*Id*. at p. 874.)

*Dimock* does not stand for the proposition that the beneficiary of a deed of trust bears the burden of establishing that the trustee conducting the foreclosure sale was properly appointed in every litigation having some bearing on the deed of trust or the foreclosure. Appellant's own complaint alleged that Reliable was the duly appointed trustee effective September 11, 2007. She presented no contrary evidence at trial. Accordingly, respondent was under no burden to present evidence on this point.[22]

the trustee named in the deed of trust.' (§ 2934a, subd. (a)(4).)" (*Dimock, supra,* 81 Cal.App.4th at p. 871, fn. omitted.)

[22] In any event, at respondent's request, this court took judicial notice of certified copies of the recorded substitution of trustee showing that Reliable had been substituted in place of Waldman Financial.

**DISPOSITION**

The judgment is affirmed.  Respondent is awarded his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, J.

We concur:

EPSTEIN, P. J.

COLLINS, J.